Cooper v. Pena.

---

COOPER v. PENA.

EQUITY will not enforce the specific performance of a contract where the party asking its enforcement cannot, from the nature of the contract, be compelled to perform it specifically on his part.

In order that a specific performance of a contract may be compelled, the remedy as well as the obligation must be mutual, and as a general rule the question of mutuality is to be determined by the contract itself, and is not affected by circumstances arising after the contract is made and the rights of the parties fixed.

| | |
|---|---|
| 21 | 403 |
| 79 | 509 |
| 79 | 510 |
| 21 | 403 |
| 83 | 55 |
| 21 | 403 |
| 91 | 91 |
| 91 | 608 |
| 21 | 403 |
| 93 | 194 |
| 21 | 403 |
| 124 | 111 |
| 21 | 403 |
| 126 | 663 |
| 126 | 667 |
| 21 | 403 |
| a129 | 288 |
| 21 | 403 |
| f130 | 529 |

The cases in which a want of mutuality at the time the contract has been entered into has been held not to be sufficient reason for refusing to enforce it—as in contracts with infants, those between lessor and lessee, trustee and *cestui que trust,* voluntary settlements, and the like—are exceptional cases in which peculiar considerations have been allowed to override the principle of mutuality, and they do not contravene the general rule as above stated.

The specific performance of a contract is not a matter of course, but rests in the sound discretion of the Court upon a view of all the circumstances, and before the Court will act it must be satisfied that the contract is reasonable and equal in its operation.

Equity will not enforce specifically a contract for personal services—especially where they are confidential in their nature and involve in their performance the exercise of discretionary authority—but will leave the party to his remedy at law.

For the purpose of enforcing specific performance of stipulations, the consideration for which was an agreement by the plaintiff to perform personal services, an offer to perform these services is not equivalent to an actual performance. The rejection of the offer by the defendant excuses the performance as a condition precedent, but does not release the plaintiff from his obligation to perform so long as he insists upon the agreement.

APPEAL from the Seventh Judicial District.

On the seventh day of October, 1850, the defendant and one Manuel Vaca were the equal joint owners of a large tract of land in Solano County, known as the " Vaca Grant," claimed by them under a Mexican grant, containing ten square leagues. Being desirous of having a partition and division of the tract the defendant employed the plaintiff to act in his behalf in attending to the surveying, marking out, and dividing it between defendant and Vaca, and constituted plaintiff his attorney in fact for that purpose. On the same day the defendant, to compensate plaintiff for his services, executed and delivered to him his bond in the penal sum of $1,000, for the conveyance of three hundred and twenty acres of land, to be selected by plaintiff, in a body, on any part of the land that might fall to the defendant's share upon the partition of the tract when it should be established. Shortly after the plaintiff, at the request of defendant, went upon the land together with the defendant and Vaca, for the purpose of making the division ; and after consultation between the three, it was agreed that there should then be nine square English miles of the land divided off and set apart to the defendant, and a like quantity to the use and

benefit of Vaca, and that the remaining portion should remain undivided until the location and boundaries of the grant should be established by the proper tribunals of the United States Government.

The plaintiff, also, with the consent of defendant, agreed with Vaca on certain boundary lines containing the nine square miles to be set apart to defendant, and he (plaintiff) attended to the dividing off, fixing, and establishing these boundaries, and Vaca, on the sixteenth of October, 1850, made and delivered to defendant a deed for the same. On the same day, defendant, in consideration of such deed of conveyance to him by Vaca, relinquished his right and title to a like quantity of the land to one McDaniel, at the request of Vaca.

During the year 1857, the tract was located by the proper tribunals and officers of the United States Government, and the boundaries definitely fixed and established, and immediately after plaintiff notified defendant that he was ready to go on and finish making the partition, and tendered his services for that purpose, and defendant then informed plaintiff that he did not want his services, and refused to allow him to have anything further to do in relation to the partition.

The plaintiff then selected one half section (three hundred and twenty acres) from the nine square miles set apart to defendant, and on the twenty-fourth day of December, 1857, demanded from defendant a deed of conveyance for the tract selected, which defendant refused to make.

The complaint alleges substantially the foregoing facts, and avers that his services rendered in the premises were worth five hundred dollars, and concludes with a prayer for a decree compelling the defendant to convey to him the three hundred and twenty acres of land selected by him, and for general relief in the premises. The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, which demurrer the Court overruled, and defendant then answered, denying each and every allegation in the complaint, and also pleading the Statute of Limitations. The case was tried by the Court without a jury, and a decree rendered for specific per-

formance, requiring the defendant to convey the three hundred and twenty acres of land to plaintiff. A motion was afterwards made by defendant to the Court to set aside the decree, and grant a new trial; and upon the hearing of such motion, the District Court made an order to that effect, from which order the plaintiff has appealed to this Court.

*Thos. M. Swan*, for Appellant.

The decree of specific performance rendered by the District Court is in accordance with the principles of equity jurisprudence. (*Flagg* v. *Mann*, 2 Sumner, 530; *Benedict* v. *Lynch*, 1 John. Ch. 379.)

The doctrine of equity allows parties by parol contract and by their acts to vary an original agreement in writing in respect to matters relating to title, and to the time of completion of the contract. (Dart on Vendors, 488; *Price* v. *Dyer*, 17 Ves. 356.)

It is laid down in Willard's Equity, 297, that "Even the performance of a condition precedent need not be proved, or even averred, when the performance was waived or prevented by the defendant, or the party to be benefited by it." (See also 6 Barb. 281, 297, 251; 21 Wend. 633.)

If the plaintiff has performed so much of his part of the agreement that he cannot be put in *statu quo*, and is in no default for not performing the residue, or is prevented from completing it by the default of the defendant, he is entitled to a specific performance. (Willard's Eq. 297; 1 Mad. Ch. Pr. 331; 1 Forb. Eq. B. chap. 6, sec. 3.)

The plaintiff here has performed a part of the services, and is in no default for not performing the residue—he has shown himself not only prompt, but diligent and eager to perform, but has been prevented by the defendant. He cannot be put in *statu quo*, for his remedy at law for his services is barred by the Statute of Limitations; and if he can recover the penalty of the bond, he certainly is entitled to a decree of specific performance. It is a well settled rule that penalties in bonds in such cases, are intended and treated as a mere security for the performance of the principal object of the contract or agreement. (Story's Eq. 1317.)

*John Currey*, for Respondent.

I.   An agreement to be enforced must be mutual in its character and certain in its terms.   (2 Wheat. 341; 2 Sum. 278.)   If the party seeking to enforce the agreement was not himself liable, and the same could not be enforced against him, there is no reciprocity in allowing him to enforce it against the other party.   (Willard's Eq. Jur. 267.)   This doctrine is explicitly recognized in *Benedict* v. *Lynch* (1 John. Ch. 307); *Parkhurst* v. *Van Cortland* (2 Id. 282); *German* v. *Machin* (6 Paige, 288); *Woodward* v. *Harris* (2 Barb. 439); *Phillips* v. *Berger* (Id. 611).   Mutuality and certainty are, in general, indispensable requisites to the granting of relief.   (*Rogers*. v. *Saunders*, 4 Maine, 92; *Bronson* v. *Cahill*, 4 McLean, 19; *Tyson* v. *Watts*, 1 Maryl. Ch. Decis. 13; *Beard* v. *Linthicum*, Id. 345.)   In *Benedict* v. *Lynch* (1 John. Ch. 378) the Chancellor said: "It has been ruled in several cases that a bill for a specific performance will not be sustained if the remedy be not mutual, or where one party only is bound by the agreement."

In *Adderly* v. *Nixon* (1 Sim. & Stu. 607) it was said, "It has been settled by repeated decisions that the remedy in equity must be mutual, and that where a bill will lie for the purchaser, it will also lie for the vendor." It may, perhaps, be objected to the authorities above cited, that there is a class of cases in which a written contract, signed by the defendant only, can be enforced against him though it could not be enforced against the other party. This is even so, but such cases are admitted to be an exception to the rule as to mutuality of remedies upon agreements, which by the Statute of Frauds must, in order to be binding in law, be in writing, and subscribed by the party to be charged. This exception to the rule as to the necessity of mutual remedies has encountered the animadversions of such enlightened jurists as Lord Redesdale, Chancellor Kent, and Senator Verplank. (*Laurenson* v. *Butler*, 1 Sch. & Lefroy, 13; *Benedict* v. *Lynch*, 1 Johns. Ch. 373; *Classon* v. *Bailey*, 14 Id. 484; *Davis* v. *Shields*, 26 Wend. 362; Willard's Eq. 267, 268.)

II.   The remedies of the parties here were not mutual, because Courts of Equity will not compel specific performance of personal

services. The consideration to be rendered for the land to be conveyed by defendant to plaintiff was personal service of the plaintiff.

In *Hamblin* v. *Dinneford et al.* (2 Ed. Ch. 527) the complaint was in the nature of one for a specific performance. It sought to compel performance of personal service embraced by an agreement in writing. Vice-Chancellor McCoun held, that a Court of Equity would not compel specific performance of a contract for personal service ; but said, that the parties must be left to their remedy at law. The same doctrine is held in *Clark* v. *Price* (2 Wilson's Ch. Cas. 157) ; *Kemble* v. *Kean* (6 Simons, 333) ; 9 Cond. Eng. Ch. 296, 300 ; *Kimberly* v. *Jennings* (6 Simons, 340) ; *Withy* v. *Cottle* (1 Sim. & Stu. 174) ; 2 Story's Eq. sec. 723.

In the case at bar it cannot and will not, I apprehend, be insisted on behalf of the plaintiff, that he could have been compelled to render the service specified in the power of attorney and bond mentioned in the plaintiff's complaint ; and if he could not have been compelled to perform such service, upon what principle can it be insisted that the defendant should be compelled to perform on his part a contract made eight years before the commencement of this action, and that, too,' after a slumbering of seven years by the plaintiff, during which time great changes will be presumed to have happened, and are proved to have happened, as to the value of the land sought to be recovered in this action ?

III. Courts of Equity, in actions for the specific performance of contracts, first seek to ascertain that the transaction between the parties amounts to and is intended to be a binding agreement for a specific object. (2 Story's Eq. sec. 715.) The ground of the jurisdiction of Courts of Equity to decree a specific performance of agreements is, that a Court of law is inadequate for such purpose, and can relieve the injured party only by a compensation in damages, which, in many cases, would fall far short of the redress which his situation might require. (2 Story's Eq. sec. 715, and cases there cited.)

When the bond was executed by defendant, it was not known what portion of the land would fall to the defendant in that partition, and, therefore, it was provided that the three hundred and twenty acres which plaintiff should have, should be selected by him

after the partition should be made. Hence, as there was no contract or agreement to convey to the plaintiff any particular piece of land, the land itself could be of no peculiar or special value to the plaintiff; and damages at law, calculated on the market price of the land, as in the case of stocks of goods, would be as complete a remedy for the plaintiff as would the land itself, inasmuch as with the damages he could purchase the same quantity of land. (2 Story's Eq. sec. 717; Willard's Eq. 279; *Buxton* v. *Lister*, 3 Atkins, 382; *Reed's Heirs* v. *Hornback*, 4 J. J. Marsh. 377.)

IV. Due performance of the service by the plaintiff as the consideration for performance by defendant, was a condition precedent to the arising of any obligation on the part of defendant to convey to the plaintiff three hundred and twenty acres of land. (*Colson* v. *Thompson*, 2 Wheat. 326.)

V. A Court of Equity will not decree a specific performance of a contract for the conveyance of land, when change of circumstances, lapse of time, or other causes would render its enforcement unjust and against good conscience. (*Brazier* v. *Gratz*, 6 Wheat. 528; *Pratt* v. *Carroll*, 8 Cranch, 471; *Perkins* v. *Wright*, 3 Har. & McHen. 326; *Ash* v. *Daggy*, 6 Ind. 260; Willard's Eq. Jur. 280; 2 Am. Lead. Cases in Eq. part 1, p. 550; *Brown* v. *Covillaud*, 6 Cal. 571.)

VI. The plaintiff's claim is barred by the Statute of Limitations. Where the Statute of Limitations would be a bar at law, the same rule is applied in a Court of Equity. (15 Pet. 272; 2 Johns. 150; 3 Id. 136; 7 Blackf. 86.) Chancery follows the law, and acting in obedience to the statute the plea of limitation is as available in equity as at law in relation to the same subject matter. (2 Gill. & John. 307; 4 Yerg. 104; 5 Mason, 95, 143; 6 Id. 61; 5 Pet. 470; 3 A. K. Marsh. 554; 1 Bald. 394; 15 Pet. 272; 2 Sch. & Lefroy, 629; 10 Wheat. 176; 16 Pet. 486; 24 Wend. 587.)

Cope, J. delivered the opinion of the Court—Field, C. J. and Norton, J. concurring.

This is an action to compel the defendant to convey to the plaintiff a tract of land in the county of Solano. The action is based upon

27

a bond given in 1850, by which the defendant bound himself, in consideration of one dollar, and of certain services to be rendered by the plaintiff, to convey to him the land.   It appears that the defendant and one Vaca were joint owners of a grant of land from the Government of Mexico, and that they were desirous of having a partition and division of the land between them.   The defendant employed the plaintiff to represent him in the matter, and for the services to be rendered agreed to convey to the plaintiff three hundred and twenty acres of his share of the land.   The bond was given to secure the performance of this agreement, vesting in the plaintiff the right of selection, and binding the defendant to convey as soon as the selection should be made.   The partition was partially effected in 1850, but difficulties arose in the way of completing it, and the parties agreed to postpone the completion until the boundaries of the grant should be fixed by the proper authorities. This was not done until 1857, when the plaintiff offered to go on and complete the partition, but the defendant refused to allow him to do so, whereupon he made a selection, and demanded a conveyance.   The Court below rendered a judgment in his favor, and the appeal is from an order setting the judgment aside, and granting a new trial.

The plaintiff contends that the judgment was correct, and that the Court erred in setting it aside.   Various grounds are urged by the defendant in support of the order, the principal one of which is the want of mutuality in the agreement.   So far as the agreement is unperformed, the plaintiff cannot be compelled to perform it on his part, for equity will not enforce a contract for personal services, but leave the party to his remedy at law.   In respect to the remedy, therefore, there is no mutuality, and it is universally admitted that equity will not enforce a contract, where the party asking its enforcement cannot himself be compelled to perform it.   The contract must be just and equal in its provisions, and the subject matter must be such that equity can take jurisdiction of it, and compel performance by both of the parties.   The remedy must be mutual as well as the obligation, and where the contract is of such a nature that it cannot be specifically enforced as to one of the parties, equity will not enforce it against the other.   As a general rule,

the question of mutuality is to be determined by the contract itself, and is not affected by circumstances occurring after the contract is made, and the rights of the parties are fixed. It is a settled principle, that the specific performance of a contract is not a matter of course, but rests in the sound discretion of the Court, upon a view of all the circumstances; and before the Court will act, it must be satisfied that the contract is reasonable and equal in its operation. The rule, as stated by Chancellor Kent, is, that unless the Court be satisfied that the contract is fair and just, and equal in all its parts, and founded on an adequate consideration, it will not, by the interposition of its extraordinary power, order it to be executed. (*Seymour* v. *Dalancey*, 6 Johns. Ch. 223.) "If there be," said he, "any well founded objection on either of these grounds, the practice of the Court is to leave the party to his remedy at law for a compensation in damages." In *Tyson* v. *Watts*, the Court of Chancery of Maryland laid down the same rule, and the Chancellor, in delivering his opinion, said: "In addition to the elements of fairness and justice, the agreement must be mutual before the power of the Court to order its specific performance can be successfully invoked; and indeed it may well be doubted whether a contract can be considered in any respect fair and just if it be not mutual." (1 Maryland Ch. Dec. 13.) The same Court, in *Duvall* v. *Myers*, (2 Id. 401) said: "The right to a specific execution of a contract, so far as the question of mutuality is concerned, depends upon whether the agreement itself is obligatory upon both parties, so that upon the application of either against the other the Court would coerce a specific performance." This was said in reference to a case decided by the Court of Appeals of that State, in which similar language had been used, and it may be stated generally as the result of the authorities upon the subject. (Fry on Specific Performance, 198.) There are cases, however, in which a want of mutuality at the time the contract was entered into has been held not to be a sufficient reason for refusing to enforce it, and these cases, if well founded in principle, must be regarded as exceptions to the rule. It has been held that the performance of a contract on one side entitled the party performing to equitable assistance against the other, though upon an application by the latter the Court could not

have compelled performance in his favor.    A contract with an infant has been held to be enforcible by him after he has become of age, notwithstanding the want of mutuality in the first instance, the same effect being given to the contract in equity as at law.    A lessee may enforce a contract to renew a lease, which could not be enforced against him; but this results from the prior lease, and the nature of the contract itself, and can hardly be regarded as an exception to the rule.    A contract between a trustee and his *cestui que trust* may be enforced by the latter, but not by the former; and under certain circumstances a voluntary settlement may be enforced by the beneficiary, who could not, of course, be compelled to accept it.    In these cases, however, there are considerations which override the principle of mutuality; and we are not aware of any case involving a reciprocity of obligation, in which a contract has been enforced in favor of a party who had not actually performed it, or could be compelled to do so.    It is safe to say that no such case exists, and that equity will not interfere in favor of one of the parties where it is incapable of doing justice to the other, by enforcing the entire contract according to its terms.    Taking this as the rule, there is no difficulty in applying it in the present case, and it is unnecessary to hold that the position of the parties, as to equitable relief, was determined by the want of mutuality in the beginning.

We have already stated that the plaintiff cannot be compelled to complete the services which he agreed to perform, and the fact that he has offered to complete them is not equivalent to actual performance.    The rejection of the offer by the defendant excuses the performance as a condition precedent, but does not release the plaintiff from his obligation to perform, so long as he insists upon the agreement.    As this is an obligation which the Court cannot enforce, there is no principle which would justify it in enforcing the obligation on the other side; and the only course is to decline to interfere, and leave the plaintiff to his remedy for damages.    It is proper to remark that there is no assurance that the offer could be carried out, for there is a third person to be consulted, who might refuse to act in the matter, or might not agree to a satisfactory partition.    This is an insuperable objection to any relief looking to the

completion of the services in future, even if the Court had the power, so far as the plaintiff is concerned, to enter a compulsory order in that respect. Besides, the services are of such a character that no Court would compel their acceptance, as they are confidential in their nature, and involve in their performance the exercise of discretionary authority.

It follows that the order granting a new trial must be affirmed, and that the further action of the Court below is to be limited to an adjustment of the damages which the plaintiff has sustained.

The order is affirmed and the cause remanded.