STRANG v. RICHMOND, P. & C. R. CO. et al.

(Circuit Court, E. D. Virginia. March 22, 1899.)

1. SPECIFIC PERFORMANCE—RAILROAD CONSTRUCTION CONTRACT.

A court of equity will not decree specific performance of a contract to build a railroad, though the object of the suit is but to allow complainant to complete a construction contract, and to restrain the company from

making other conflicting contracts, and disposing of securities pledged to him for the work contracted for.

2. EQUITY—JURISDICTION — INADEQUATE LEGAL REMEDY—DEFENDANT'S INSOLVENCY.

Equitable jurisdiction on the ground of inadequate legal remedy cannot be sustained on the mere allegation of defendant's insolvency.

3. SAME—DAMAGES AT LAW—RECOVERY.

Equity 'will not take jurisdiction of a suit to restrain a railroad company from making contracts for the building of its road, in contravention of a contract made with complainant, and from disposing of collaterals pledged to him to secure payment of the work, where it does not appear that damages commensurate with the injury cannot be recovered at law.

4. SAME—CONTRACTS—UNCERTAINTY.

· Where a railroad construction contract was uncertain and inadequate in many particulars, and subjects were left open upon which irreconcilable differences between the parties might arise, specific performance thereof cannot be decreed in equity.

This is an application for an injunction, on a bill filed in the circuit court of the United States for the Eastern district of Virginia.

The case set forth is substantially this: That the defendant railroad company, under a charter acquired under the laws of the states of Virginia and North Carolina, was engaged in constructing a line of railway near Richmond, in the state of Virginia, to a point near Ridgeway, in the state of North Carolina; that on or about the 11th of September, 1897, it mortgaged its line of railway to the defendant the Mercantile Trust Company to secure $2,300,000 worth of bonds, for the purpose of building its railroad, the acquiring of terminal facilities, rights of way, depots, etc., along its route, and particularly in the cities of Richmond, Manchester, and Petersburg; that after the said railroad company had constructed about 20 miles of its railroad south of the city of Petersburg, on or about the 18th day of October, 1898, it entered into a verbal agreement with the complainant, whereby said complainant agreed to construct, furnish, equip, and build a road from a point on the Raleigh & Gaston Railroad near Ridgeway, N. C., and the Hermitage road, on the line of the Richmond, Fredericksburg & Potomac Railroad, near ·Richmond, Va., a distance of about 103 miles, including the 20 miles built as aforesaid, together with the necessary depots, water stations, section houses, buildings, and terminals, in consideration of an amount of the mortgage bonds aforesaid from which would be realized a sum not less than $1,800,000, or that sum in cash, ·and that the said road was to be turned over to the said complainant, including that already built, together with the right to issue bonds secured by said mortgage, as therein provided, and complainant was to reimburse the defendant railroad company the sum of $460,000 expended by it in the construction of the 20 miles of road theretofore built by it, and in the acquisition of rights of way, terminals, etc., evidenced by proper vouchers therefor, and further to pay to the Colonial Construction Company the sum of $100,000; that the said complainant was to have full control of the engineering for the said railroad, the construction thereof, and the right to purchase all lands necessary therefor, as well as materials and supplies of all kinds used in its construction, and that defendant railroad company ·was to furnish all necessary plans, specifications, drawings, engineers' reports, surveys, and data then in its possession; that, upon making said contract, complainant entered in and upon the line of the said railroad as aforesaid, and is in possession thereof, and is and has been engaged in preliminary work and construction thereof; · that defendant railroad company refused to deliver to complainant the plans, specifications, etc., referred to, whereby he was greatly inconvenienced. and prevented from proceeding with the work; that the defendants said railroad company and De Witt Smith were about to cancel the mortgage above referred to, and the bonds secured thereby, upon which complainant relied as security for the payment of the construction of said road; and that they were about to enter into a contract with some other person to construct the same. And complainant asked that the .said defendants and the defendant the Mercantile Trust Company be enjoined and restrained from canceling the said bonds or the mortgage, or any

of them secured by the same, which were to become complainant's property upon the completion of the road, or from in any manner interfering therewith; that the defendant railroad company be enjoined from interfering in any manner, pending the hearing and determination of this cause, with the complainant's possession of said railroad, and be required to fulfill its contract on its part; that the bonds secured by the mortgage aforesaid be decreed to be a fund for the payment of the construction of said railroad, and that defendant be required to issue and deliver said bonds, and the defendant the Mercantile Trust Company to certify the same, as required by the terms and provisions of said mortgage. And the said complainant further averred the insolvency of the defendant railroad company, the lack of an adequate remedy at law, and prayed for general relief, etc.

The defendants the railroad company and De Witt Smith appeared and demurred to the complainant's original and amended bills; and the said railroad company answered, denying generally the allegations of the bill, and particularly the existence of any contract with complainant, and that he was in possession of its line of railroad, or any part thereof, or that he was building, or had ever built, any part of its road, or that it had ever had any dealings or transactions with him, and alleging that, on the contrary, the building of its road had been regularly let to the Colonial Construction Company months before the alleged contract with complainant to build the same, and that the construction company was proceeding with the work on the road. The company further denied complainant's right to, interest in, or lien upon its said mortgage bonds, or any of them, or upon any of its property or estate of any character whatsoever, and averred its entire solvency. Each side filed affidavits on the motion for an injunction, and the case now comes up for hearing upon that motion, and upon the demurrer to the original and amended bills of complainant.

John Larkin and D. Lawrence Groner, for complainant.
Henry & Williams and W. R. McKenney, for defendants.

WADDILL, District Judge (after stating the facts as above). In the condition of the pleadings, it will be necessary first to dispose of the demurrer to the bill; and, in the view the court takes of that question, it will be unnecessary to pass upon the merits of the motion for an injunction. Upon the demurrer it becomes material to inquire whether the case made by the bill is one in which a court of equity will decree specific performance of a contract, and upon this the following questions arise: (1) Whether a court of equity will entertain a bill to decree specific performance of a contract to build a railroad; (2) or for the specific performance of a contract to deliver railroad bonds issued, or to be issued, in aid of the construction of a railroad; (3) whether or not the complainant has a complete and adequate remedy at law, and such as, therefore, disentitles him to relief in a court of equity; and (4) whether, conceding the remedy in equity, and that the court should entertain a bill for the specific performance of a contract such as is sought to be enforced, there really exists such a contract as the court should enter upon the performance of.

That courts of equity will not decree specific performance of contracts to build railroads is now too well settled to admit of discussion. A leading case on the subject in this country is that of Ross v. Railway Co., 1 Woolw. 26, Fed. Cas. No. 12,080. This case was decided by Mr. Justice Miller, sitting on circuit, and has since been approved by the supreme court of the United States in Railway Co. v. Marshall, 136 U. S. 393, 407, 10 Sup. Ct. 846. To the

same effect is the decision of Judge Dillon, of the United States circuit court. Fallon v. Railroad Co., 1 Dill. 121, 125, Fed. Cas. No. 4,629. And the supreme court of Virginia has likewise held in the recent case of Ewing v. Letchfield, 91 Va. 575, 579, 22 S. E. 362. These authorities would seem to be conclusive of this question.

Complainant, however, insists that this case is not necessarily controlled by these authorities, because, as he contends, its object is not to require the building of a railroad, but to allow him (complainant) to complete the building of one upon which he has entered, and to enjoin and restrain defendant from in the meantime interrupting him in his work, making other contracts in connection therewith, and from parting with its securities pledged to him for the work to be performed by him. This contention, while quite ingenious, is fallacious, for the reason that one of the objections to courts of equity entering upon the enforcement of such contracts at all is that complete relief cannot be given by a specific decree, or by several decrees carrying out a given direction. For instance, under the mortgage in this case the issue of bonds is contemplated upon the completion of certain divisions or sections of the road. This would require independent action of the court, to be had at different times and under different circumstances, and necessarily dependent upon many conditions, which it would be next to impossible to anticipate or foresee. Another principle governing suits for specific performance, and specially applicable to this case, is that the remedy to be afforded by the court must be mutual; that is to say, that the court shall not afford one party relief, and not the other. Cathcart v. Robinson, 5 Pet. 264; Marble Co. v. Ripley, 10 Wall. 339, 359; Anson v. Townsend, 73 Cal. 415, 15 Pac. 49; Cooper v. Pena, 21 Cal. 403; and 2 White & T. Lead. Cas. Eq. p. 1107, note. To restrain the defendant railroad company from interfering with the complainant in the construction of this road, and to take from it the control of its securities, amounting to $2,300,000, and hold them for the benefit of complainant, and to cause their payment and delivery to him upon such terms and conditions as the court might impose, would be manifestly improper and unjust, unless coupled with the requirement of performance on complainant's part of what entitled him to this relief; and that would involve the building of the railroad. In other words, to adopt this theory the court would be indirectly attempting to do what it could not directly do. Besides, it would necessarily involve the specific performance of a contract for the delivery of railroad bonds, which is, of itself, one of doubtful propriety, and upon which the court ought not to enter,—certainly not under the circumstances of this case. 2 Story, Eq. Jur. §§ 717, 717a, 718, 724a; Pom. Spec. Perf. Cont. 24, 27; Ross v. Railway Co., supra, and cases there cited; Cuddee v. Rutter, 6 Eng. Ruling Cas. 641, and note page 646. Complainant comes into this forum because of alleged inadequacy of relief at law. This, in a large measure, depends upon the character of the relief to which he is entitled, unless it be that upon the mere allegation of insolvency he is entitled to redress in a court of equity. This is not my understanding of the law. Something more than an apprehension that a judgment, if obtained, will not prove availing, on account

of insolvency, is necessary, to justify a court of equity in reaching forth its hand to give relief. Serious consequences may result by this action on the part of the court. The right of trial by jury is denied the parties, and courts of equity should only intervene where the remedy at law is plainly inadequate; that is to say, where, by ordinary legal procedure, the merits of the controversy, according to right and justice, cannot be gotten at, and relief afforded. 1 Story, Eq. Jur. § 33, and note; Hyer v. Traction Co., 168 U. S. 471, 480, 18 Sup. Ct. 114; Fallon v. Railroad Co., 1 Dill. 125, 126, Fed. Cas. No. 4,629.

There is no apparent reason why damages, commensurate with the injury done, cannot be recovered at law for the breach of the alleged contract in this case, arising either from failure to allow the work to go on, or to pay for the same when built. Assuming, however, that equity has jurisdiction, should the court enter upon the enforcement of such a contract as is set up by complainant in his bill? Indeed, could the court undertake to enforce such a contract without at once finding itself involved in making contracts, as distinguished from enforcing them? The alleged contract is in many respects vague and uncertain. It does not, with any degree of certainty, fix the point at which the road is to begin or to end. "Complete a road between Ridgeway, North Carolina, a point on the Raleigh & Gaston Railroad, and Hermitage road, Virginia, on the line of the Richmond, Fredericksburg & Potomac Railroad, a distance of about 103 miles." This is exceedingly uncertain, and the question of the point of the location of the terminus of the railroad on the line of the Richmond, Fredericksburg & Potomac Railroad Company, near Richmond, or on the line of the Raleigh & Gaston Railroad, near Ridgeway, N. C., might be a most material question, both as to the matter of the cost of the location, and the value and desirability of terminals. The route of the road, further than through the cities of Manchester, Petersburg, and Richmond, does not appear, or the number and kinds of depots, station houses, etc., to be erected on the road, nor the character or location of the bridges contemplated to be built over the waterways to be spanned; and the time within which all this is to be done is not determined. Indeed, thousands of dollars might, and in all probability will, be involved in a controversy over the erection of a single bridge, or a slight difference in the location of the line, none of which a court could undertake to intelligently determine between the parties when they themselves had left the matter open. In the nature of things, many changes would necessarily have to be made in the execution of the work, and irreconcilable differences would stare the parties in the face at every step. Unless the terms of the contract sought to be enforced can be ascertained with reasonable certainty, a court of equity ought not to enter upon its enforcement. Preston v. Preston, 95 U. S. 200, 202; De Sollar v. Hanscome, 158 U. S. 216, 15 Sup. Ct. 816; Atwood v. Cobb, 26 Am. Dec. 657, and note page 661. In the Ross Case, supra, will be found reference to a number of English and American authorities of special interest on this point. A decree may be entered dismissing, with costs, the bill of the complainant, as a consequence of which the motion for an injunction fails.