ELLEN M. HOWE *vs.* EMERY C. WATSON, administrator, & others.

Hampden.     March 6, 1901. — May 22, 1901.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Estoppel. Frauds, Statute of. Equity Jurisdiction,* Specific performance.

In a suit by a woman to enforce against the estate of her deceased sister an agreement of the deceased to leave all her property to the plaintiff, it is no bar to the plaintiff's recovery that in ignorance of her rights she accepted payments of money from the administrator as a part of her distributive share of her sister's estate.

A letter began: "Dear sister Ellen" and contained the following: "Will you and Minnie come and stay with me as long as I live I will pay all your expenses, and what property I have left will be yours Ellen, my expenses are very large but all that I leave shall be yours." The letter was signed in the name of the person making the offer and the offer was accepted orally by the person addressed who was the only sister Ellen of the writer. In a suit to enforce the contract contained in the letter, it was *held*, that the letter satisfied the requirements of the statute of frauds and of St. 1888, c. 372, requiring an agreement to leave property by will to be in writing, that the description of the person addressed was sufficient, and also the description of the property, as the amount of all the property which the writer should leave at her decease could be made certain.

A woman eighty-five years old offered in writing to give to her sister, seventy years old, all the property she should leave at her decease, if the sister and her daughter would come and stay with her during the remainder of her life. The younger sister accepted the offer and with her daughter came from a distant State and stayed with the older sister until her death thirty-eight hours after their arrival. She died intestate, leaving real estate worth about $4,000 and personal property worth about $2,000. In a suit in equity brought by the surviving sister against

the administrator of the estate of the deceased sister and the heirs at law of the deceased, it was *held*, that the contract was fair and equal, and, although it could not have been specifically enforced against the plaintiff, was of such a nature that the time for performance by the defendant could not come until the plaintiff's part had been fully performed, that the plaintiff had fully performed her part of the contract, and that, considering the situation of the parties and their relation to each other and the moderate size of the estate, the plaintiff should not be relegated to her rights in an action at law, but was entitled to a decree ordering that the real estate be conveyed to her and that the administrator pay over to her all personal property remaining in his possession after satisfying all claims against the estate.

BILL IN EQUITY, by amendment from an action of contract, to enforce an agreement contained in a letter of Nancy J. Ball, the defendant Watson's intestate, to leave to the plaintiff all the intestate's property, the heirs at law of the intestate being joined as defendants. Writ in the original action at law dated September 12, 1895.

In the Superior Court the case was heard by *Braley*, J., who reserved it upon the pleadings and the master's report for the consideration of this court.

The letter containing the agreement sought to be enforced was as follows:

"Springfield, April 16, 1894. Dear Sister Ellen: I don't think I am getting any better I am feeling very bad. Will you and Minnie come and stay with me as long as I live I will pay all your expenses, and what property I have left will be yours Ellen, my expenses are very large but all that I leave shall be yours. Should like to have you come just as soon as you can My nurse cannot stay very much longer and Mr. Jenkins is going to move. Try and get here before they move. Yours with love your far off sister. Nancy J. Ball, Per Mary E. Chapman.

" P. S. Dear Cousin I write this letter for Mrs. Ball she is not able to write, come just as soon as you can. The Doctor says Mrs. Ball cannot live long she is failing fast. M. E. C."

Henry W. Bosworth, Esquire, appointed special master in the case reported as follows:

"I find that Nancy J. Ball, late of Springfield, Massachusetts, died on May 21, 1894, seised and possessed of real and personal estate; that in July, 1894, the defendant, Emery C. Watson, was duly appointed administrator of her estate; that his inven-

tory filed therein shows personal estate valued at $2,243.86, and real estate valued at $4,000. . . .

" I find that on the sixteenth day of April, 1894, Ball, at her home in Springfield, authorized and directed the sending of the letter, a copy of which is annexed to the bill of complaint, to the plaintiff then at Orlando, Florida; that on receiving the same the plaintiff communicated to Ball her consent to coming with her daughter Minnie from Orlando to Springfield, if Ball would advance money to cover the expense; that Ball afterward, on May 4, 1894, sent the plaintiff a draft for $100, which the plaintiff received, and that the plaintiff with her daughter came from Orlando to Springfield, arriving at the home of Ball on May 19, 1894, where they remained till after the death of Ball, which occurred about thirty-eight hours after their arrival.

" Evidence was introduced at the hearing tending to show that Ball was on April 16, 1894, and ever thereafter, and for several months before, so weakened in mind by age and disease, she then being in her eighty-sixth year, and having suffered much from illness, as to be incapable of making a binding contract. But I find on the whole evidence that Ball, though enfeebled somewhat in mind by age and illness, had at the time sufficient mental capacity for making a valid will or a valid contract.

" It appeared from the evidence that the letter in evidence with statements previously made by Ball to the plaintiff led the plaintiff to believe that Ball would leave a will giving her property to the plaintiff, that after diligent search by the plaintiff and others, when no will of Ball could be found, the administrator was appointed; that afterward the plaintiff, with some of the other heirs of Ball, executed a power of attorney to the administrator, giving him charge of the real estate and authorizing him to sell it; that in August, 1894, the administrator made four payments to the plaintiff in cash, in rents she had collected and in personal articles of the estate, amounting in all to $227.13, and she gave a receipt to him for each payment as being part of her distributive share in the estate of Ball; that in the same month she was paid by the administrator seventy-five dollars as from the distributive share of Clara Fraser in the estate, and one hundred dollars as from the distributive

share of Laura A. Watson, these sums being paid on orders from those next of kin respectively, and being duly receipted for by the plaintiff as from such distributive shares respectively, and that all these things were transacted before the plaintiff had taken legal counsel as to her rights now in question."

The defendant filed two exceptions to the special master's report. 1. To the master's finding that the letter, of which a copy was annexed to the bill of complaint, was authorized or directed to be sent by Nancy J. Ball to the plaintiff, and averring that this finding was not warranted by the evidence. 2. To the master's finding that Nancy J. Ball, at the time the letter was written, had sufficient mental capacity for making a valid will or valid contract, and averring that this finding was not warranted by the evidence.

When the case was reserved the following decree was entered in the Superior Court: " This case came on to be heard this day, upon the coming in of the Special Master's Report, and was argued by counsel, and by consent the exceptions to said Master's Report, filed by the defendants, are overruled, and thereupon, upon consideration thereof, it is ordered, adjudged and decreed that the Master's Report be affirmed."

The evidence reported by the special master was set forth in the report to this court and the material portions of it are described in the opinion of the court.

*E. P. Kendrick*, for the administrator.

*D. E. Webster & E. H. Lathrop*, for the heirs at law of the testatrix.

*W. W. McClench & C. W. Bosworth*, for the plaintiff.

HAMMOND, J. This was originally an action at law to recover damages for the breach of a contract alleged to have been made between the plaintiff and the defendant's intestate, by the terms of which the latter agreed to leave at her death all her property to the plaintiff. It was subsequently changed into a suit in equity, and the heirs at law of the intestate were joined with the original defendant as parties defendant. The bill alleges in substance the contract as set out in the declaration in the action at law, and prays that the real estate left by the deceased may be decreed to belong to the plaintiff, and may be conveyed to her by some proper deed, and that

the administrator may be ordered to pay over to her the personal property, which may remain in his possession, after all claims against the estate are satisfied.   Various answers were filed, and, the pleadings being completed, the case was sent to a special master to report to the court the facts, and such evidence as either party might request.   Upon the filing of the report, the defendants excepted to the finding that the letter of April 16, 1894, from the deceased to the plaintiff, upon which the plaintiff relies as showing the alleged contract, was authorized by the deceased; and to the finding that, at the time the letter was written, the deceased had sufficient capacity for making a valid will or contract; the ground of the objection to each finding being that it was not warranted by the evidence.

Upon the hearing on these exceptions, they were overruled by consent, the report was affirmed, and a decree to that effect was duly entered.   Thereupon, the presiding justice reserved the case for this court " upon the pleadings and master's report."

It seems to have been the understanding of the parties that, although the exceptions to the master's report were overruled by consent and the report was confirmed, still the reservation means that the evidence reported by the master is a part of the report, and that the objections made to the report by the exceptions are still open to the defendant; and counsel upon each side have presented to us the case upon that understanding, and have argued among other things the points raised by the exceptions.   Without deciding that such is the effect of the reservation, we have under the circumstances examined the evidence to see whether the findings to which the exceptions relate should stand.

The evidence relating to the finding that the letter was authorized by the deceased, is clear and direct, and the only question can be as to her mental capacity.   The evidence relating to the finding that, at the time the letter was written, the deceased had sufficient mental capacity to make a valid will or valid contract, is conflicting.   The witness, Mary E. Chapman, who wrote the letter, testified that she was in the habit of visiting the deceased perhaps once or twice a week during the spring of 1894; that the latter was her father's cousin; that the wit-

ness had frequently talked with her about sending for the plaintiff, and that, at the time the letter was written, the intestate was dressed, and sitting up in a chair, was able to walk about the house, " was smart and seemed pretty well " ; that she appeared in her right mind ; that " her mind was just as clear as it could be ; as it ever had been " ; that she dictated to the witness " every word and every line " of the letter, and that the witness wrote under her dictation ; that the witness read to her the letter after it was thus written, and that the deceased approved it, and directed her to sign her own name and the name of the witness, and to mail it. It is true that the physicians, who attended her during the time within which this letter was written, testified that the mental faculties of the deceased were impaired to a great extent, in which in some degree they were corroborated by the nurse who waited upon her. Still, we cannot say upon the evidence that the master who heard the witnesses was wrong in his finding as to the mental capacity of the deceased. These findings of the master must therefore stand.

The plaintiff says that the deceased offered to give all the property she should leave at her decease to the plaintiff, if she and her daughter would come and stay with the deceased during the remainder of her life ; that the plaintiff accepted the offer, and, with her daughter, came and stayed with the deceased as long as she lived.

The first question is whether the contract is proved. The evidence of the offer upon which the plaintiff relies is not parol, but is found in the letter of April 16, 1894, which is as follows :

"Springfield, April 16, 1894.   Dear Sister Ellen: I don't think I am getting any better I am feeling very bad.   Will you and Minnie come and stay with me as long as I live I will pay all your expenses, and what property I have left will be yours Ellen, my expenses are very large but all that I leave shall be yours.   Should like to have you come just as soon as you can My nurse cannot stay very much longer and Mr. Jenkins is going to move.   Try and get here before they move.   Yours with love your far off sister.   Nancy J. Ball, Per Mary E. Chapman.   P. S. Dear Cousin I write this letter for Mrs. Ball she is not able to write, come just as soon as you can.   The Doctor says Mrs. Ball cannot live long she is failing fast.   M. E. C."

It is well to consider the circumstances existing at the time the letter was written, and the relations the parties bore to each other. The plaintiff Ellen, and the intestate Nancy, were sisters, aged seventy and eighty-five years respectively. Both had been married, and both were widows. Ellen, when nine years of age, went to live with Nancy and her husband as their daughter, until she was married. At the time the letter was written, Nancy was living in her house in Springfield in this State. A part of it was let to a tenant, and a part occupied by her. She was cared for by a hired nurse. She was apprehensive that both the nurse and the tenant might leave. She was infirm with age and disease, and she had no issue living. The most of her near relatives were far away from her, and there does not appear to have been in her vicinity any one upon whom she could call. She was evidently convinced that she could reasonably expect but little more of life, and that even that must be attended with pain and infirmity. She was liable at any time to be without a tenant, or a nurse. Besides the house in which she lived, which was worth about $4,000, she had personal property amounting to about $2,000. She expected to leave something, but "her expenses were large," as she thought, and she could not tell how much would be left at her death. In this gloomy and lonely situation, this venerable and infirm woman is thinking of her sister Ellen, who, in years gone by, had been long a member of her household as a daughter; and in these last days she longs for her companionship. She knows that this sister and daughter are living in Florida in very modest circumstances, but she is determined to have them come to her if possible, and she writes the letter. The first sentence shows that she is discouraged about her own health, and states her reason for writing the letter. In the next sentence, she asks if Ellen and the daughter will come and stay with her "as long as I live." She is proposing an arrangement which shall last during her life, and the proposition is addressed to a favorite sister. It is a proposition requiring in substance that the sister, who is seventy years of age, shall break up her own home in a distant State. It is not difficult to see by the urgency of the appeal the eagerness with which the proposition is made, and the anxiety that it shall, be accepted. To induce her sister to come she writes " my ex-

penses are very large but all that I leave shall be yours." This is not the language of a woman to the man she is about to marry, expressing with the extravagance somewhat characteristic of such communications the writer's intention that her property shall be shared and enjoyed in connection with him. See *White* v. *Bigelow*, 154 Mass. 593, and *Walker* v. *Walker*, 175 Mass. 349. Nor is it the expression of the writer's idea of what the law will do with her estate, nor is it contained in a communication of the general tenor of a friendly letter manifestly having no relation to business. It is found in a communication written for the sole purpose of inducing the sister to come and stay with her during her life. Nor does it come from a person having a reasonable expectation of many years of life, who therefore may be presumed to be slow to deprive himself of the right to dispose of his property. Nor is the promise inconsistent with any duty owed to other relatives. It contemplates an arrangement for the last remaining days of a life already prolonged beyond the allotted age. It relates only to what may be left after the expenses of that life are paid, it is made to a favorite sister, and there is nothing to show that, so far as respects not only the physical comfort, but also the peace of mind of the promisor, it was not the best and most comfortable arrangement she could have made. It is a promise to induce action. It is plain and direct in language, and in the form of an absolute promise, and all the circumstances tend to show that it was made as such.

It is objected that the evidence does not show that the plaintiff accepted the proposition made in the letter. The proposition was that the plaintiff should break up her home in Florida, where she was living with her son and daughter, — both of whom, so far as it appears, were unmarried, — and should come with her daughter to Springfield, and stay with her sister as long as the latter should live. The plaintiff, on the reception of the letter, replied at once that she would come just as soon as she could " perfect arrangements, pack my [her] household goods, etc.," as she did not know when, if ever, she would return to Florida. The money to pay her expenses was sent to her by her sister in accordance with the promise contained in the first letter, and, with reasonable dispatch under all the circumstances, the plaintiff, on the nineteenth day of May, came with her daughter

to her sister's house, where she remained until the death of her sister, which occurred about thirty-eight hours after their arrival.

Here we have in writing a request, that the plaintiff do certain acts involving considerable preparation for a woman of her age, and a change in her home life for an indefinite period, accompanied with a promise to give compensation, and a compliance with that request upon the part of the plaintiff. In view of all the circumstances, no satisfactory reason appears why she should perform these acts in compliance with the request except in reliance upon the promise which accompanied it. Moreover, in answer to the nineteenth cross-interrogatory propounded to her by the defendants, whether she wrote to her sister that she would make no claim upon her estate if she would send her $100, she says: "No, I went because she was my sister, and because she wanted me to go, and because I could afford to go, and shut up my Florida home, if she would pay all my expenses and then leave her property to me. Had it not been that I fully expected to fall heir to her property, I could have ill afforded to break up in Florida and go, however anxious I might have been to be with her in her last moments."

It is true that to the twenty-second cross-interrogatory, as to whether she understood that her sister before she died had agreed to give her estate or any part of it to her, the plaintiff, as pay for her coming to Springfield to stay, she said "No," but that answer is inconsistent with the general tenor of her testimony and with the answers given before, and cannot be taken as controlling them. Upon the findings of the master and the evidence, we can have no doubt that the contract is proved as alleged in the bill. *First National Bank* v. *Watkins*, 154 Mass. 385, 387, 388. The plaintiff performed her part of the contract. It is true that her sister lived only thirty-eight hours after she arrived, but she had left her home in Florida, and had performed the contract to the letter. Whether she would have been able to do what the contract called for, if the sickness of the intestate had lasted for months, or years, is not now material. She undertook to perform it, and under the circumstances did all that the contract required. The fact that her sister died so soon, seems to us to be immaterial upon the rights of the plaintiff.

Nor is the fact, that the plaintiff has received from the administrator money as and for a part of her distributive share and of that of another heir, conclusive against her. It is plain that all along she expected to find a will, that she protested she was entitled to the property, and that she was ignorant of her rights. There is no estoppel by reason of a change of position on the part of the administrator, or of any one else through her acts. The money already received by her may be charged against her, for she can have it but once.

The contract is valid. "That it is competent for a party to stipulate for the disposition of his property at the time of his decease is too well settled to admit of doubt or question." Bigelow, C. J., in *Jenkins* v. *Stetson*, 9 Allen, 128, 132. See also *Wellington* v. *Apthorp*, 145 Mass. 69 ; *Schutt* v. *Missionary Society*, 14 Stew. 115.

The contract meets the requirement of the statute of frauds and of St. 1888, c. 372. The acceptance of a written offer need not be in writing. *Sanborn* v. *Flagler*, 9 Allen, 474. The plaintiff is sufficiently described as the party to the contract. The letter was sent to the plaintiff, who was the only "sister Ellen" the deceased had. *Potter* v. *Duffield*, L. R. 18 Eq. 4, 7. The property is sufficiently described. It is to be all the property which the deceased shall leave at her decease. *Id certum est quod certum reddi potest. Hurley* v. *Brown*, 98 Mass. 545. *Ryder* v. *Loomis*, 161 Mass. 161, and cases therein cited. *Nichols* v. *Johnson*, 10 Conn. 192. *Roehl* v. *Haumesser*, 114 Ind. 311.

The difficult question in this case is whether the plaintiff shall have a decree for specific performance, or whether she shall be relegated to her rights under an action at law. The contract upon its face is not open to the objection that it is not fair and equal. At the time it was made, it could not have been foreseen which party would profit the most by it. The promisor might have lived until her estate was exhausted in her support, or otherwise dissipated. Each party assumed the loss or gain by contingencies, and each was willing to do so. There is no evidence of fraud, mistake, or undue influence. The contract must be regarded as fair and equal in its nature, and as voluntarily made. It is true, that it is generally laid down that the contract must be of such a nature that the right to specific per-

formance must be mutual. But the exceptions to the rule are numerous, and the principle cannot be controlling and decisive against the plaintiff in a case like this, where, by the nature of the contract the time for specific performance does not come until the contract is fully performed by the one seeking it, and the contract has been fully performed by such party. While on this the authorities are conflicting, (see, for instance, *Allen* v. *Cerro Gordo Co.* 40 Iowa, 349, and *Cooper* v. *Pena*, 21 Cal. 403,) we cannot see why, on principle, an actual performance is not as good as an obligation to perform, so far as respects the right to a specific performance; and there are many cases where such relief has been granted in a case like this. See for discussion of this subject and a collection of the authorities, Pomeroy, Spec. Perf. §§ 167, 168, and cases cited in the notes thereto.

While the question whether, in this case, there should be a decree for specific performance is one of some difficulty, still in view of the situation of the parties, their relations to each other, and the moderate size of the estate, we think that the plaintiff can maintain her bill, and that she is entitled to the relief prayed for; and it is

*So ordered.*