**GOETZ et, Plaintiffs-Appellants, v. JACOBS et, Defendants-Appellees.**

Ohio Appeals, Second District, Franklin County.

No. 4326. Decided November 4, 1949.

Matthew L. Bigger, Columbus, for plaintiffs-appellants.
Binns & Tresemer, Columbus, for defendants-appellees.

**OPINION**

By THE COURT.

This is a law appeal from a judgment in favor of each defendant. The judgment followed the sustaining of a motion of counsel for defendants for judgment upon the statements contained in the fourth amended petition of the plaintiffs, motion for new trial having been filed and overruled.

Four errors are assigned:

(1) In the assumption and finding that the contract alleged was not in writing.

(2) In construing the allegations of the petition in favor

of defendants and against the plaintiff and thereby finding that the allegations of the petition did not disclose that the plaintiffs were in exclusive possession and control of certain premises described in the petition.

(3) In applying the doctrine of estoppel when it was not pleaded.

(4) In failing to hold that the fact alleged did not constitute part performance of the contract on their part sufficient to take it out of the statute of frauds, which action resulted in denying due process of law and equal protection of the laws contrary to the Federal and State Constitutions.

Without further comment, we hold that the third assignment of error is not involved and that portion of the fourth assignment of error relating to the action of the trial judge does not present any justiciable question under the Federal or State Constitutions.

At the outset it is necessary to examine the judgment and motion, the sustaining of which resulted in the judgment from which the appeal is taken. The motion was not to strike the amended petition because it was a sham pleading. The judgment was not entered for the defendants after the sustaining of a demurrer, plaintiffs electing to plead no further. We resolve it to be the equivalent of the sustaining of a demurrer and a determination that because of the facts set up and averments made in the four petitions preceding the one under consideration, the plaintiffs could not state a cause of action which is not barred by the statute of frauds. This latter conclusion, if sound, would not be unfair to the plaintiffs because they had plead the same basic facts in all of their petitions changed only as required by rulings of the court on prior motions and demurrers.

The fourth amended petition is voluminous. It contains some conclusions not good pleading but we must accord to the plaintiffs the benefit of a liberal interpretation of any facts well pleaded. **Sec. 11345 GC; State v. Ford Motor Co., 114 Oh St 221; Heidle v. Baldwin, 118 Oh St 375.**

It is urged that the court erred in holding that the amended petition disclosed that the contract sought to be enforced was in parol. A close reading of the operative language of the contract as plead does not require the conclusion that it was not in writing, although the inducement to the contract clearly was oral. However, the language of the petition, especially in connection with a notation on one of the praecipes, is convincing that the contract was oral. The praecipe was as follows: "Endorse action for specific performance of oral contract to convey specific real estate,"

etc. We are satisfied that the judge who passed on the motion was warranted in concluding that the contract sued upon was oral.

As briefly as we may, we set forth enough of the facts appearing in the fourth amended petition upon which to base an understanding of the further questions presented. At the time of the occurrences set forth, Alois Thurn and Mary Thurn were husband and wife, living at 960 Kirby Street in Columbus, Ohio. They were growing old and Mary Thurn had been stricken with a known incurable illness from which she was continuously confined to her bed for a period of six months prior to her death. Francis L. Goetz, plaintiff, and Mary Goetz, were husband and wife. They had two children, Mary Catharine Goetz and Loretta Goetz, also known as Sister M. Cecelia Stella, plaintiffs. Mary Goetz was a niece of Alois Thurn, reared in his home as a member of his family. Mary Goetz and her husband acquired real estate in Columbus where they and their family lived. As Mrs. Thurn was suffering from an incurable disease, the Thurns were in dire need of assistance and were unable to find anyone to employ to serve them. This condition was made known to Mary Goetz and as a result thereof, in addition to taking care of her own household duties, she went into the home of the Thurns, rendered such attention and services as were required during the last sickness and death of Mary Thurn and after her death, for a period of about four years, divided her time between her own home and the Thurns', and administered to the needs of Alois Thurn and his son. The work which Mary Goetz tried to do in both families resulted in her sickness and she was advised by her physician that she should not longer carry on her heavy duties. These facts were brought to the attention of Alois Thurn by Mary Goetz who indicated a desire to be relieved from the work that she had been doing for the Thurns. Whereupon, the transaction, which is the basis of the claimed contract, took place between Alois Thurn and Mary Goetz and her husband, Francis L. Goetz.

A full statement of the occurrences constituting the contract is set up in the second page of the fourth amended petition by the terms of which Mary Goetz and Francis L. Goetz, her husband, were to sell their own home and with their children move into the home of Alois Thurn at 960 Kirby Street. The proposal of Alois Thurn to the Goetzes was, if they would do as he requested and perform the services suggested, he would deed to them the residence property at 960 Kirby Street and another apartment property. It is further averred that

upon the acceptance and performance of the preliminary steps of the contract by the Goetzes that when they had moved into the residence of Alois Thurn he then said to them, "Now this is your home," and put them in possession thereof; that thereafter they exercised possession, control and dominion of the house and grounds; that by their consent and as a part of the agreement, Alois Thurn and his son reserved two rooms for sleeping purposes. There is further averment as to the terms of the contract respecting the apartment house which it is not necessary to set forth. Performance on the part of the Goetzes is asserted and failure of Alois Thurn to make the deed as agreed is alleged.

It is further averred that as a result of the extraordinary labors incumbent upon Mary Goetz in carrying out her part of the contract she suffered a paralytic stroke about four months before the death of Alois Thurn and that thereafter performance of the contract was carried on by the other members of the Goetz family.

The prayer is for specific performance of the contract to make a deed to the plaintiffs, the Goetzes, and for other relief.

It will be observed that the terms of this contract required the performance of household duties in all of their aspects which services have been in the cases held to be compensable in money. If no other services were contemplated in the agreement between the parties than those which were subject to pecuniary evaluation, then the plaintiffs state no cause of action. But it is manifest that there were other and different services and circumstances in this case, as pleaded, than ordinarily appear in the reported Ohio opinions. Some of them may be suggested: Mary Goetz, a niece of the Thurns, in whose home she had been reared as a daughter, sustained a close and intimate relationship to them. This relation resulted in special confidence being reposed by Mary Goetz in her foster parents, a status which is frequently the subject of consideration and protection in courts of equity. At the time of the alleged contract, Alois Thurn could not secure services such as he desired and so expressed in his proposal to Mary Goetz and her husband. The Goetzes were not the ordinary hired help. They had their own family, had owned their own home for twenty-seven years and as a part of the obligation under the contract, sold it, abandoned their own family life and moved into the Thurn home and devoted their entire time and attention, not only to the manual labor required incident to their services, but as companions and members of the Thurn family. They fully performed their

obligations under the contract. It is inferable that the possession and dominion of the property, as averred, was as complete and exclusive as the nature of the services required to be performed by the contract permitted. Such possession is held to be sufficient in Lamb v. Hinman (Mich.), 8 N. W. 709; Burroughs, et al. v. Smith (Tex.), 294 S. W. 948, 952; Woodbury v. Gardner, 77 Me. 68.

No case has been cited from Ohio, nor do we have knowledge of any where specific performance has been decreed in oral contracts to make a will or deed where the facts parallel those appearing here. However, there are well considered statements, some of which are obiter, by members of our highest court who have written the opinions which recognize that there may be in equity enforceable oral contracts to make a transfer of real property, notwithstanding the statute of frauds. Outside of Ohio, there are numerous cases wherein the facts are similar to those here pleaded and where specific performance has been decreed and supported by reviewing courts. Accepting these authorities and the observations of our own judges as sound expositions of the equitable principles controlling, we are of opinion that the fourth amended petition here under consideration states a good cause of action for the relief sought by specific performance of the contract alleged. The facts pleaded would support equitable intervention because of complete performance of the contract by the Goetzes, some of the conditions of which were not intended to be and not susceptible of evaluation in money, and by the further part performance of Alois Thurn in putting the Goetzes in possession of the premises where the Thurns lived.

The latest pronouncement germane to our question is found in the opinion of Judge Stewart in **Snyder v. Warde, Admx., et al., 151 Oh St 426,** Ohio Bar, May 30, 1949. The court was there considering an oral contract to make a will which it held to be unenforceable because the services to be performed under the contract were compensable in money and that neither performance nor the payment of money took the contract out of the terms of §**10504-3a GC.** The fourth syllabus of this case is:

"Ordinary services to be noncompensable from a pecuniary standpoint, generally, must be such as involve a detriment or sacrifice upon the part of the one rendering them, motivated by sentiment rather than expectation of payment."

If the services here performed could be said to be ordinary services, the facts developed in the amended petition, in our

judgment, meet the requirements of the quoted syllabus. Judge Stewart quotes from Judge Bradbury in **Shahan, Exr., v. Swan, 48 Oh St 25,** at page **435** of the opinion, and the second syllabus of **Newbold v. Michael, 110 Oh St 588,** 144 N. E. 715, as authority for the proposition carried into the fourth syllabus of the Snyder case. At page 438 of the opinion, it is said:

"In order for services to be such as are not compensable in money they must be of a kind which are rendered as a result of a sacrifice by the one performing them, generally being rendered because of love and affection. There are many cases where a relative or a dear friend leaves his own family, home or position to go to work for the other who needs his services, and the services based upon such sentiment are difficult, if not impossible to evaluate in money. As was said by Judge Minshall in the case of **Emery v. Darling, 50 Oh St, 160, 167,** 33 N. E. 715, 'The value of the society of one sister to another is incapable of measurement in money.'

"In the present case the only evidence on the matter is that there was no sentiment between plaintiff and Harper and their relationship was strictly on a business basis; * * *. Plaintiff did not give up her home or her family to come to Harper, she advertised for a place and went to work for Harper not only for the money compensation she received but for a home for herself with both her children with her, a status which she had not been enjoying previous to becoming Harper's housekeeper.".

These observations of Judge Stewart have special application to the facts developed in the fourth amended petition. At page 440, he continues, citing Whitney v. Hay, 181 U. S. 77, 45 L. Ed., 758, 21 S. Ct. 537:

"is a case where an old childless couple made a contract to leave a home to a younger couple in consideration of the younger couple becoming members of the older couple's family. The younger couple gave up their home and moved in with the older couple, furnishing the home of the older people and supporting them. The court said, with reference to the younger husband, that his plans of life were materially altered in order that he might take care of Piper and wife during their respective lives. Piper put Hay in actual possession of the premises for execution of his agreement with Hay."

The facts in this case parallel ours in particulars. At page 441, Puddy v. Sharpe, 248 Mich., 147, 226 N. W. 853, is cited to the effect that the party seeking the remedy, as here, had changed his entire tenor of life in performing his part of the contract. Howe v. Watson, Admr., 179 Mass., 30, 60 N. E. 415, is also cited and helpful.

The subject of enforcement in equity of an oral contract to transfer real property is well considered in 49 Am. Jur. pages 817 to 830, inclusive, and the effect of factual development on such procedure is categorically discussed. Upon change of status of promisee because of the contract it is said, page 824:

"Evidence of such a change bears not only upon the existence of the contract, but it is persuasive proof that any remedy at law would be inadequate, since such change ordinarily would not be taken into consideration in fixing compensation for a breach of the contract." Citing Best v. Gralapp (Neb.) 96 N. W. 641, 99 N. W. 837.

In this case although the promisee in addition to services rendered incurred considerable expense the promisor lived only twenty months after performance begun under the contract.

* * * "The great weight of authority supports the rule that where personal service has been rendered under an oral agreement for compensation by a devise of real estate, the contract may be enforced irrespective of the question of possession, if the services rendered are of such a character that their pecuniary value cannot be satisfactorily estimated and the contract indicates that the parties did not contemplate possession by the promisee during the lifetime of the promisor."

See also Carlin v. Bacon, Admrx., etc., (Mo.) 69 A. L. R. 1 to 220, and continuation of annotation following Holsz, et al. v. Stephen, Exr., etc. (Ill.) 106 A. L. R. 737, 742; Jaffee v. Jacobson, 48 Fed. 24; Sears, et al. v. Redick, et al., 211 Fed. 856, 2nd syllabus.

The Ohio cases cited by appellee are not inconsistent with the conclusion which we have reached. The strong language of Judge Williams in **Kling, Admr. v. Bordner, 65 Oh St 103,** was an action at law for damages for breach of an oral contract to transfer real property. It is recognized that the doctrine of part performance is applicable only in equity, pages 103, 104 of the opinion. In **Ortman v. Ortman, 45 Oh**

**Ap** 551, the consideration for the oral contract, the usual personal services performed by a farm laborer were found to be "clearly susceptible of being measured by a pecuniary standard," page 557, the opinion. Like situation is found in **Nunn v. Boal, 29 Oh Ap 141.** Both of these latter cases recognize the principle which we hold to be controlling here.

The motion for judgment as to the individual defendants should have been overruled and the judgment in their behalf was improperly entered.

The judgment will be reversed and cause remanded.

MILLER, PJ, HORNBECK and WISEMAN, JJ, concur.

### ON APPLICATION FOR REHEARING

No. 4326.   Decided November 28, 1949.

By THE COURT.

Submitted on an application for rehearing based upon the proposition that the court took no notice of the fact that there is a misjoinder of parties-defendants.   This question was not presented nor considered on the appeal on the merits.   It is obvious that the Common Pleas Court would not have denied the plaintiffs the right to file another amended petition because it had been held that there was a misjoinder of parties.   It is manifest to us that at the time that the Common Pleas judge refused to permit another amended petition to be filed, he had concluded that a cause of action could not be stated against any defendant.   We recognize that it had been determined that the executor and the administrator could not be joined as parties-defendants, and with that conclusion we have no controversy.   The mere fact that they are carried in the style of the case on the appeal does not change their correct status upon the record as it comes to this court.   We are of the opinion that no prejudice could result to the defendants-executor and administrator by the determination which this court has made on the appeal.

The order on the application will be that it be dismissed because the rules of this court make no provision for the filing of such an application.

MILLER, PJ, HORNBECK and WISEMAN, JJ, concur.