DETROIT FIRE & MARINE INS. CO. v. BOREN–STEWART CO. et al.
(No. 7914.)

(Court of Civil Appeals of Texas. Dallas. April 6, 1918. Rehearing Denied May 11, 1918.)

1. INSURANCE ⬤⟳328(5)—CHANGE OF TITLE—CONTRACT.

An agreement to sell insured stock of goods if insurance company would transfer the insurance to the purchaser, not carried out because the insurance company refused to make the transfer, is not a change in the interest or title or possession of the property, within the meaning of a policy provision avoiding the policy in case of such change.

2. INSURANCE ⬤⟳654(1)—CHANGE OF POSSESSION.

Where change of title, interest, or possession of insured goods is claimed to avoid a policy, possession of prospective purchasers under their agreement to purchase, in case the insurance company would transfer the insurance, is immaterial, except as throwing light upon the question of change of title.

3. INSURANCE ⬤⟳501—AMOUNT OF LIABILITY — OFFER TO SELL FOR LESS THAN CASH VALUE.

Under a fire policy provision that the company shall not be liable for more than three-fourths of the actual cash value of the insured property, the company's liability for damages is not affected by the fact that insured had offered to sell the property for less than its actual value.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action by Boren-Stewart Company and others against Detroit Fire & Marine Insurance Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

E. G. Senter, of Washington, D. C., for appellant. Thompson, Knight, Baker & Harris and Geo. S. Wright, all of Dallas, for appellees.

TALBOT, J. The appellees Boren-Stewart Company, a corporation, and Sanger Bros., a copartnership, sued the appellant Detroit Fire & Marine Insurance Company, upon two policies of fire insurance which had been issued by appellant on the 14th day of March, 1914, and on the 6th day of July, 1914, respectively, whereby the appellees' stock of merchandise and office furniture and fixtures, etc., were insured against all direct loss and damage by fire for the period of one year from the respective dates of said policies, while located in a certain building in the town of Ferris, Ellis county, Tex. The

policy issued on the 14th day of March, 1914, was for an amount not to exceed $1,850, $1,500 of which covered the stock of merchandise, and $350 covered the office furniture and fixtures, etc. The policy issued July 6, 1914, was for an amount not to exceed $1,250, and covered the stock of merchandise. The property was destroyed by fire on the 18th day of July, 1914, and appellees alleged that by reason thereof they suffered on the stock of merchandise a loss of $2,932.19, and on fixtures, etc., $275.50. They further alleged that they were the owners of the property destroyed, and that due notice was given of the loss claimed in accordance with the terms of the policies. The defendant answered with general and special denials, and with the following special pleas: (1) That the policies sued on each contained a provision to the effect that the entire policy shall be void if any change other than by the death of the assured take place in the interest, title, or possession of the subject of the insurance, whether by legal process or judgment, or by voluntary act of the insured, or otherwise; that, notwithstanding said provision of said policies, the plaintiffs, after the execution and delivery of said policies, and before the fire, to wit, about the 6th day of July, 1914, in consideration of the sum of $1,-500, sold and delivered all of the property to E. H. Cornwell, or E. H. Cornwell & Son, a partnership; that at the time of the fire E. H. Cornwell & Son were in the exclusive possession and control of the property, and were the legal owners thereof, and no consent of the defendant thereto had been obtained, and no transfer of said insurance had been made to said new owners at the time of the fire; that by reason thereof both of said policies were absolutely void at the time of the fire, and defendant is not liable to plaintiffs on either of them. (2) That the consideration for which the plaintiffs sold said property to said Cornwell or Cornwell & Son was the sum of $1,500, and, had said fire not occurred, all they could have realized would have been the sum of $1,500; that it would be against the letter and spirit of said policies, and against public policy, to allow the plaintiff to recover more by reason of said fire than they could have recovered without said fire, if said defendant be mistaken in contending that the title to said property had passed to said purchaser or purchasers, and said policies had been made void thereby, then in no event can defendant be liable to plaintiffs exceeding the sum of $1,500, less the salvage. (3) That defendants had breached the record warranty clause of each of the policies relating to the keeping of books and inventories of the stock, and therefore the policies were void. (4) That the right of cancellation of the policies was retained and duly exercised before the fire. (5) That the defendants had always been ready to pay to

plaintiffs the amount of the premiums upon the policies, and plaintiffs had refused to accept the same.

The appellees, by supplemental petition, replied to appellant's special pleas. The court submitted the case to the jury upon special issues, and they made the following findings: That the actual cash market value of the stock of merchandise described in the policies immediately before the fire, on or about July 19, 1914, at place of said fire, was $1,660; that the actual cash market value of the furniture and fixtures described in the policies immediately before the fire, on or about July 18, 1914, at place of said fire, was $300; that the actual cash market value of the merchandise saved from said fire was $145; that the actual cash market value of the furniture and fixtures saved from said fire was $145; that the plaintiffs substantially complied with the record warranty provision of each of the policies sued upon.

Upon these findings judgment was rendered in favor of the appellees for the sum of $1,571.70. Appellant filed a motion for a new trial, which was overruled, and the case is now before this court on writ of error.

The first assignment of error complains of the trial court's refusal to give a special charge requested by appellant directing the jury to return a verdict in its favor. The proposition advanced under this assignment is as follows:

"Said motion should have been granted because the undisputed evidence shows that there was a change of title, interest, and possession of the subject of the insurance after the policies were issued and before the fire of such a nature as to make the policies void, in accordance with their provisions to that effect."

[1] If, as here contended, the undisputed evidence showed such a change of title, interest, and possession of the property insured after the issuance of the policies, and before the fire, as rendered the policies void under their terms, the peremptory instruction requested should have been given. We do not, however, agree to the proposition of appellant that such a change was effected. On the contrary, we think the evidence shows, as asserted by appellees, simply an agreement between the assured and third parties, namely E. H. Cornwell & Son, to the effect that the insured property should be sold to such third parties upon condition that the insurance company carrying the insurance on the property would agree to transfer the policies to such proposed purchasers, and that prior to the fire which destroyed the property the insurance company refused to so transfer the policy. Such an agreement, in our opinion, does not constitute a change in the interest or title or possession of the property, within the meaning of the fire insurance contracts sued on. It would extend this opinion to too great length to quote the testimony bearing upon the question in full. The substance of it is that the appellees desired to sell the property insured, and E. H.

Cornwell and his son, Guy Cornwell, wanted to buy it. They looked at the property, T. E. Blanchard representing the appellees, offered it to Cornwell and son at $2,500. This offer the Cornwells refused, but offered $1,500 for the property. Blanchard at first declined to accept the offer of $1,500, but later, and after seeing Mr. Jenkins at Sanger Bros., agreed to take it. On July 6, 1914, the Cornwells went to Blanchard's office, and there Blanchard took Cornwells' notes for $1,500, with the understanding that the sale of the property could not and would not be consummated unless the insurance company would transfer the insurance policies to the Cornwells. Blanchard, after taking the notes, went to see Mr. French, who had charge of appellees' insurance, and French was not in his office. Blanchard returned, and told Cornwell that he could not "close the deal that day," for the reason that he did not know whether or not he could get the insurance transferred to him; that, unless he could get the insurance transferred, appellees did not want to make the sale. He further said Guy Cornwell (the son)—

"could go down there to Ferris, and open the business, get the stock ready for business, and begin selling goods with this understanding; that if we could get the insurance transferred to E. H. Cornwell & Son that the deal was closed, but, if we could not, all the cash that Guy, the son, took in down there he could make a report of to us, and the cash would belong to us, after we paid him for his expenses and paid him for his time. Mr. Cornwell executed the notes for the $1,500, and I agreed with him to hold them on my desk and make no entry of the notes until we had determined the insurance matter, and found out definitely whether we could get the insurance transferred or not. I kept the notes on the desk in my office. I raised the question with Mr. Cornwell again, and said: 'Let us understand that the stock belongs to the Boren-Stewart Company and Sanger Bros., and you are simply representing these companies, until we can get the insurance on the stock transferred, because we do not want to sell it to you otherwise. We do not want to sell to you on a credit with the understanding that the notes will be paid out of the stock or the sales of the merchandise unless we can get that merchandise insurance in your name.' That is the last word we had. Guy went down there, took charge of the stock of goods, according to my information, kept a record, and reported to us for the goods. He was to report to us if for any reason the deal was not consummated, and we were to pay him for his services while there. I do not remember whether Mr. French came back to the office the next day or not, but the matter was on my desk for several days. When he came in he asked me, 'What about the Ferris matter? Do you still want that insurance?' I said, 'No; we want that transferred to E. H. Cornwell & Son, at Ferris.' I told Mr. Cornwell that I would try to have those policies transferred to E. H. Cornwell & Son, and that if they were not transferred the property was to remain in Boren-Stewart Company and Sanger Bros. I think it was Thursday before the fire that Mr. French reported to me that Mr. Holland, the insurance agent, would not transfer the policies to Cornwell & Son. I phoned to Mr. Holland, the insurance agent, and Holland said, 'I can't transfer the policies.' Mr. French also asked Mr. Holland to transfer the policies to E. H. Cornwell & Son, and Holland told him

he could not do it. The money that was received from the sale of the goods before the fire, I think some of it was paid in current expenses down there, and Mr. Guy Cornwell kept the balance and applied it on what we owed him for his services."

The testimony of the witness T. E. Blanchard is fully corroborated by the other witnesses, and it is without dispute shown that the policies were not transferred to E. H. Cornwell & Son, as contemplated by the parties, and that the insurance company positively refused to so transfer them. E. G. (Guy) Cornwell testified that a price of $1,500 was agreed upon for the property; that Mr. Blanchard told him to go ahead and open up the stock of goods and sell because it was hot weather and there were some perishable goods on hand; that Blanchard told him to keep account of the cash he took in, and that if the sale was completed it belonged to E. H. Cornwell & Son, but if the sale was not completed it belonged to Boren-Stewart Company; that he went down to Ferris, opened up the stock of goods as Blanchard instructed him, and kept a daily record of sales, etc.; that when he was getting ready to go down and take charge of the goods Mr. Blanchard said, "If anything happens before that trade is completed, it belongs to Boren-Stewart Company and to Sanger Bros.;" that the stock of goods belonged to Boren-Stewart Company and Sanger Bros. until the insurance was transferred; that the "deal is not completed until the insurance is transferred." This witness further testified that he kept a record of what he sold and a record of his expenses, and sent them to Boren-Stewart Company; that he deposited the money in the bank, and paid it out for expenses; that he got some compensation for his time, and that the business was open eight days before the fire occurred; that he was to be paid for his services, in the event the sale was not completed, a reasonable salary, but that the amount was not fixed; that he charged appellees $60 a month. E. H. Cornwell testified that E. H. Cornwell & Son contracted for the stock of goods at Ferris, and had just about closed the deal; that when they were getting ready to leave the office of T. E. Blanchard, Mr. Blanchard said:

"Now understand, these goods remain the property of ourselves, or Boren-Stewart Company and Sanger Bros., until these insurance policies are transferred. After the fire I came to Dallas, saw Mr. Blanchard, and told him about the fire. I asked him if he had had the papers transferred, and he said, 'No.' He then canceled the notes and turned them over to me."

[2] There was no evidence that the possession of the Cornwells, under their agreement to purchase, in any manner increased the hazard, and such "change of possession was immaterial, except so far as it threw light upon the issue as to change of title." Pennsylvania Fire Ins. Co. v. Stockstill, 197 S. W. 1036. In that case it was held, and we think properly so, that a deed deposited in escrow does not become operative, and passes no title, until the condition has been performed or the event has happened upon which it is to be delivered to the grantee; that where the vendor, who delivers a deed in escrow, has a fire policy on the house situated on the premises, which is destroyed by fire before the conditions of the escrow are performed, the hazard from the fire not being increased, the right to recover on the policy is not forfeited, under its clause requiring unconditional and sole ownership. In Stockstill's Case the following language from R. C. L. 628, is quoted with approval:

"There is no change in the title or right of possession to the property, although the purchaser occupies it with the consent of the vendor in anticipation of completing the contract of sale and purchase. So when, in such case, the vendor has a fire insurance policy on a house situated on the premises, and the house is destroyed by fire while so occupied, and before the conditions of the escrow are performed, the hazard from the fire not being increased, the right to recover on the contract of insurance is not forfeited."

That case is analogous and the principles enunciated therein are applicable and controlling here. If, as held in Stockstill's Case, there was no change in interest, title, or possession under a contract of sale when the deed to the property insured was deposited in escrow to be delivered to the purchaser upon his compliance with a condition to pay off a lien, etc., and when the purchaser had gone into possession of the property, it is difficult to conceive that there would be a change in the interest, title, or possession of the property insured in the instant case, when the condition of the agreement of sale was to the effect that the title to the property should remain in the appellees unless the appellant insurance company should transfer its policies to the proposed purchasers, the Cornwells. In Stockstill's Case, as argued by counsel for appellees, the party agreeing to purchase could comply with the terms of the contract by paying off the liens upon the property given by him in exchange for the insured property, but in the case at bar nothing the proposed purchaser could do would put him in position to demand a transfer of the insured property. Furthermore, prior to the fire the condition named for a transfer of this property had failed; the insurance company had refused to transfer the insurance policies to Cornwell & Son, and the possession of Cornwell & Son when the fire occurred was merely the possession of the appellees.

The case of Fire Association of Philadelphia v. Perry, 185 S. W. 374, is distinguishable in its facts. In that case the court points out that the insured property was purchased by the plaintiffs in the suit for their brother, L. E. Perry; that he was placed in possession of it under an agreement that if he paid to plaintiffs $3,000 in monthly payments of $150, and if in the meantime he had refrained from drinking and lived with

his wife, the property would be his; that Perry was carrying out his part of the agreement at the time of the fire which destroyed the property, and that had the property not been destroyed Perry could have carried out his part of said agreement. and have become the sole owner of the property. The court then holds that under such a state of facts Perry's sisters could not, over his protest or objection, have arbitrarily canceled the agreement, and that such a contract and possession constituted a change, other than by the death of the insured, in the interest, title, and possession of the insured property which, under the terms of the policy sued on, avoided it and defeated a recovery thereon. No such state of facts exists in the present case, and its decision is not controlled by the Perry Case. Here the thing necessary to be done in the transfer of the policies of insurance to Cornwell & Son in order to complete the proposed sale was to be done by the insurance company, and not by either party to the contract. Such transfer was purely optional with the company and this was clearly and fully understood by both the appellees and the Cornwells, and nothing either could do would bring about a situation which would entitle either to enforce the contract of sale. The insurance company, in the exercise of its clear legal right, refused to make the transfer of the policies, and, in consequence thereof alone, consummation of the proposed sale was prevented or defeated, and appellees at the date of the fire were its sole owners. We therefore hold that the proposition of appellant under his first assignment of error, is not sustained by the record, and the assignment will be overruled.

The second assignment of error, in addition to raising the same question presented by the first assignment, asserts that the undisputed evidence shows that there was a breach of the iron safe or record warranty clause of the policies in suit of such a nature as to render said policies void and no recovery can be had upon them. This assignment, like the first, is not sustained by the record and will be overruled. The jury found that the appellees substantially complied with the record warranty clause of each of the policies sued upon, and this finding is supported by the evidence.

[3] The next and last contention is that the verdict for $1,571.50 is excessive. This contention is made upon the theory that, if the appellant is liable upon the policies at all, its obligation is simply to indemnify the appellees to the extent of three-fourths of the actual loss suffered by them; that according to their testimony they had sold the property for $1,500, conditioned that the appellant would transfer the policies to Cornwell & Son; that if the policies had been transferred and the property burned, appellees could only have suffered a loss of $1,500, and hence they could not lawfully recover in this action more than three-fourths of said amount. The policies provide:

"It is understood and agreed to be a condition of this insurance that, in the event of loss or damage by fire to the property insured under this policy, this company shall not be liable for an amount greater than three-fourths of the actual cash value of each item of the property insured by this policy, not exceeding the amount insured on each item at the time immediately preceding such loss or damage."

Under this provision of the policies the appellant is liable for the damages suffered not to exceed three-fourths of the actual cash value of the property, regardless, we think, of the question of whether or not the assured had offered to sell it for less than its actual cash value. The jury found that the actual cash value of the stock item of the policy at the time of the fire was $1,660; that the actual cash value of the fixture item at the time of the fire was $300. The jury also found that the actual cash value of the stock saved was $145; that the actual cash value of the furniture saved was $145. The policies provided that any loss should be due and payable 60 days after filing proof of loss. Proof of loss was filed on the 11th day of September, 1914. The court rendered judgment against defendant for $1,571.50. We are unable to say that the verdict is excessive.

Believing that no reversible error is disclosed by the record the judgment of the district court is affirmed.

Affirmed.