## PARRISH v. WEBER. (No. 2264.)

Court of Civil Appeals of Texas. El Paso.
April 25, 1929.

Davis & Hatchell, of Dallas, for appellant.
W. R. Herring and A. E. Manning, both of Dallas, for appellee.

HIGGINS, J. The petition in this case is lengthy. For the disposition of the appeal the following excerpts therefrom and statement of its allegations will suffice, viz.:

"2. That heretofore, to-wit, about the 29th day of November, 1927, and all the other times hereinafter set out, the defendant was and still is the owner of a certain trade-mark entitled 'Weber's Superior' or 'Weber's Superior Root Beer' registration No. 234,504 U. S. Patent Office and owns the exclusive right to use the same in connection with the sale and manufacture and distribution of root beer; that also the said Weber was the owner of a certain method of making syrup and other preparation going into the manufacture of root beer, and was engaged in the business of manufacturing such syrup and selling it to dealers in root beer, which said syrup could be made into root beer by the adding of water and sugar and probably some other ingredients; that on said day and date the plaintiff and defendant entered into an agreement, by which the plaintiff agreed to pay the defendant $2,000.00 for the exclusive right to handle root beer made from the syrups of the defendant under the name of 'Weber's Superior Root Beer' in Fort Worth, Tarrant County, Texas, and by which the defendant agreed to transfer to plaintiff said exclusive right as long as plaintiff desired to engage in such business in such territory.

"3. That on said day and date the plaintiff and defendant entered into the following contract in writing, touching said business, to-wit:

"'Nov. 29, 1927.

"'On this day Roy Parrish and A. J. Weber, owner of Weber's Root Beer Company, do solemnly enter into the option to purchase certain rights by said Roy Parrish from said A. J. Weber, conditioned as follows:

"'First, that such purchase of rights shall be based on a contract the same as one between one William W. Mitchell and A. J. Weber, made on or about March, 1926, except only as follows:

"'1. Consideration: $200.00 forfeit money immediately on consummation of this option contract; $800.00 when location is secured and building is started; $500.00 when said Roy Parrish starts in root beer business; and $500.00 thirty days after said business is started.

"'2. It is understood that the $250.00 here paid shall be forfeited to said Weber, and shall be liquidating damages to him for failure on the part of said Roy Parrish to carry out this agreement and no other damages are contemplated in this option.

"'3. This purchase shall not be transferable without the consent of said A. J. Weber.

"'[Signed] A. J. Weber.
"'Roy Parrish.

"'This option contract is for the purchase rights to Ft. Worth. And it is further understood that this option shall expire May 1, 1928. [Signed] A. J. Weber
"'Roy Parrish.'

"4. Plaintiff further shows that at the time of the execution of said agreement aforesaid, defendant exhibited to plaintiff the said William W. Mitchell contract referred to therein, and that said contract provided that the said Weber would convey to the said Mitchell, the licensee, the following personal property, to-wit: (Here follows description of certain chattels.)

"That it was further provided in said Mitchell contract that the said Weber conveyed to the licensee for the territory therein mentioned the exclusive right to run and conduct one or more root beer businesses therein, and do the same under the name of 'Weber's Root Beer' and use the name 'Weber's Root Beer' to designate the product being handled; and that the said Weber would sell to licensee all root beer and concentrations and syrup demanded by said licensee at the prevailing market price, which plaintiff says was then the sum of $2.60 per gallon,

and that licensee would use said concentrations, syrups and extracts at the prevailing market price and by which the said licensee agreed to make root beer according to the formula and instruction by the said defendant and that said rights to use said beer and purchase the same at said prices would continue as long as said licensee should choose to operate thereunder in said territory) and that during said time said licensee should continue to operate and buy all beer syrup used from the defendant. It was further agreed that said right could not be transferred without the consent of . the said Weber.

"5. That by reason of the premises and the execution of the so-called option contract, the plaintiff became and is entitled to said exclusive use of said formula and said name of 'Weber's Root Beer' and to use the same and deal in such products in Fort Worth, Tarrant County, Texas, exclusively, from and after the time of the execution of said contract and to pay for the same at the rate and charges therein set forth, and on the terms herein set forth, as contained in said option-contract and in said Mitchell contract, to-wit: That is to say, to receive forthwith, upon the payment of said $200.00 and the execution of said option contract, or at least as soon as plaintiff announced his intention so to exercise said option, the personal property herein set forth and upon the payment of said other amounts, as herein set forth, and as soon as plaintiff was ready for business in said City, to buy said concentrations and syrups at said current market price, which was then $2.60 and the defendant became, and still is obligated not to transfer said rights to any other persons for Fort Worth, Tarrant County, Texas, or himself of any other person to sell 'Weber's Root Beer' in said territory."

Allegations are then made of defendant's breach of its agreement to enter into a contract like the Mitchell contract and fulfill same, and resulting damage.

The suit was filed April 28, 1928.

Judgment was prayed for the damage alleged and "that the defendant be required on final hearing, during the term plaintiff desires to use the same, to sell plaintiff, at the then prevailing market price, all syrups and concentrations for the manufacture of Weber's Superior Root Beer, and allow him the exclusive use of the name 'Weber's Superior Root Beer' for Tarrant County, Texas; that a temporary restraining order issue forthwith, restraining the defendant, his agents and assigns from selling to any other person, or conveying to any other person the rights to sell Weber's Root Beer in Fort Worth, Tarrant County, Texas, or use the name 'Weber's Superior Root Beer' in such territory, and from himself entering into business therein, or allowing any other person so to do."

Temporary injunction was issued as prayed.

From an order dissolving same this appeal is prosecuted.

The first thought that suggests itself, in considering the. contract which it is alleged the defendant bound himself to enter into with the plaintiff, is whether it would be a conspiracy in restraint of trade and contrary to article 7428, R. S.; American Brewing Ass'n v. Woods (Tex. Com. App.) 215 S. W. 448. But the allegations respecting defendant's ownership of United States trade-mark perhaps relieve it of that suspicion. See Coco-Cola Co. v. State (Tex. Civ. App.) 225 S. W. 791.

The evidence adduced upon the hearing makes it doubtful whether the defendant is in default in failing to enter into and perform the contract with plaintiff as provided by the option agreement.

But there is another phase of the case made by the petition which precludes the plaintiff from the injunctive relief sought.

It will be observed that under the allegations of the petition the contract agreed to be entered into imposed upon the plaintiff no obligation to use the trade-mark and purchase the defendant's products for any definite time. On the contrary, the plaintiff could have discontinued doing so whenever he saw fit. There is thus shown such want of mutuality of obligation as to defeat any right to the injunctive relief sought. 14 R. C. L. p. 383, § 84; Fowler Utilities Co. v. Gray, 168 Ind. 1, 79 N. E. 897, 7 L. R. A. (N. S.) 726, 120 Am. St. Rep. 344; Rutland Marble Co. v. Ripley, 10 Wall. 339, 19 L. Ed. 955; Rust v. Conrad, 47 Mich. 449, 11 N. W. 265, 41 Am. Rep. 720; Welty v. Jacobs, 171 Ill. 624, 49 N. E. 723, 40 L. R. A. 98; Southern Express Co. v. Western North Carolina R. Co., 99 U. S. 191, 25 L. Ed. 319.

The principle is thus stated in the Rutland Marble Company Case supra: "Another reason why specific performance should not be decreed in this case is found in the want of mutuality. Such performance by Ripley could not be decreed or enforced at the suit of the Marble Company, for the contract expressly stipulates that he may relinquish the business and abandon the contract at any time on giving one year's notice. And it is a general principle that when from personal incapacity, the nature of the contract, or any other cause, a contract is incapable of being enforced against one party, that party is equally incapable of enforcing it specifically against the other, though its execution in the latter way might in itself be free from the difficulty attending its execution in the former."

In Fowler Utilities Co. v. Gray, supra, it was said: "It is admitted that the supply of hot water heat bargained for in the contract under consideration could be terminated at the will of appellee, without liability for damages; and it must follow that its continuance was dependent upon the pleas-

ure of both parties. The decree entered by the trial court may, for aught we know, have been virtually annulled before this time at the instance of appellee in the exercise of his discretion. The agreement relied upon, so far as it remains executory, is not binding for want of mutuality, and its performance cannot be enforced in equity at the suit of either party. Other objections to the complaint have been urged, but the conclusion reached renders their consideration unnecessary."

So also in Welty v. Jacobs, supra, it was said: "Before a contract will be specifically enforced there must be mutuality in the contract, so that it may be enforced by either; and, as this contract was of such a nature that it could not have been specifically enforced by appellee Jacobs, it should not be so enforced by appellant. Lancaster v. Roberts, 144 Ill. 223, 33 N. E. 27; Fry, Spec. Perf. §§ 440, 441; Wat. Spec. Perf. § 196; Cooper v. Pena, 21 Cal. 411."

In this connection, see also East Line & R. R. Ry. Co. v. Scott, 72 Tex. 70, 10 S. W. 99, 13 Am. St. Rep. 758, and Houston & T. C. Ry. Co. v. Mitchell, 38 Tex. 85.

Under the authorities cited the temporary injunction was properly dissolved.

Affirmed.