**STUART et al. v. E. M. GOODWIN, Inc.**
No. 8327.

Court of Civil Appeals of Texas. San Antonio. Nov. 13, 1929.

Rehearing Overruled March 5, 1930.

Davenport, West & Ransome, of Brownsville, Wm. N. Bonner, of Wichita Falls, and Strickland & Ewers, of Mission, for appellants.

James R. Dougherty, of Beeville, and Vernon B. Hill, of Mission, for appellee.

FLY, C. J.

This is an appeal from an interlocutory order, granted in vacation, in which a receiver was appointed to take charge of 5,-600 acres of land, less 80 acres, and a temporary writ of injunction was granted to restrain appellants from interfering with the receiver in the execution of the duties imposed upon him by the court. The receivership and injunction were sought and obtained at the instance of E. M. Goodwin, Incorporated, and the order granting the receivership named W. R. Montgomery as such receiver, and enjoined appellants R. T. Stuart and R. T. Stuart & Co., from enforcing a deed of trust held by them on the land. Appellants sought an order from the court suspending the injunction and appointment of a receiver until the case could be heard on appeal, which was refused.

Appellee claims an interest in the land, subject to the deed of trust under a conveyance from E. M. Goodwin, which was executed on the —'— day of ———, 1928. The deed of trust on the land was executed on November 3, 1918, by the owner, Eloisa Vela Dougherty, to secure a debt due by her to F. G. Oppenheimer and Ben F. Levy. The debt and deed of trust were kept alive by extensions, so that the debt amounting to $21,811.69 would not be barred by limitations until December 3, 1929. The debt and lien are now owned by R. T. Stuart & Co. The land in question, after the extension of the debt, was sold by the owner to J. C. Marks and George Hartnagel, nonresidents, subject to the lien and debt. On February 3, 1926, a written contract was entered into between Marks and Hartnagel, and it is through that instrument that E. M. Goodwin claims an interest. On June 7, 1929, Marks and Hartnagel conveyed the land to Edward L. Stallcamp, and he conveyed it to the American Land & Development Company, one of the appellants herein.

The right to the appointment of a receiver must primarily depend upon appellee, proving that it has a right to or interest in the 5,520 acres of land. Article 2293, subd. 1, Rev. St. Upon construction of the contract between Marks and Hartnagel and Goodwin any claim of appellee to any right to or interest in the land must depend.

The record would indicate that there was an exhaustive trial on the merits, but it would neither be profitable or even proper to take up and discuss the different phases of the case presented by the record. The question to be determined at this time is, Does the contract between Marks and Hartnagel and Goodwin show such an interest in the land as would justify a proceeding for an injunction and the appointment of a receiver?

The first paragraph of the contract asserts ownership in Marks and Hartnagel, gives the reasons for making the contract with E. M. Goodwin, agrees to furnish him the land for the purposes and on the terms thereinafter set out, and gives a full description of the land. The second paragraph binds the owners to have made a survey of the land and maps and other data in view of irrigation. The third paragraph binds the owners to survey the land into 40-acre tracts and lay out all necessary roads and plat the same and furnish other necessary means to sell the land, and pay for such improvements. In the fourth paragraph the owners agreed to furnish each purchaser an abstract of title, and all deeds, notes, and deeds of trust necessary to be used in the sale of the land, and that all contracts of sale should be furnished by Goodwin. The fifth paragraph is an obligation upon the part of Goodwin to use diligence in the sale of the land, to give the necessary advertising and conduct excursions. By the sixth clause Goodwin is given exclusive control of the sale of the land for five years, and it provides for his remuneration and for the sums to be paid the owners, and in clause 7 all money over and above a certain sum per acre was made a trust fund to be used as therein directed. The eighth clause gives Goodwin power to sell the land upon the terms and conditions he may elect, providing that no tract smaller than 5 acres shall be sold, and that ven-

dor's lien notes shall not run for a longer period than ten years, and that notes should be made payable to a trustee to be named, and that all damages received for failure to enter into contracts should be the property of Goodwin. The ninth clause is as to the time limit given Goodwin to make sales, and stipulates the amount of land to be sold each year. The tenth clause disclaims the agency of Goodwin in the sale of land, and the eleventh section grants the privilege to Goodwin to acquire and develop lands contiguous to the 5,600-acre tract.

As some stress is placed on paragraph 12, we copy as follows: "12. Said parties of the first part hereby obligate and bind themselves to convey to a trustee to be selected by said parties of the first part and approved by said party of the second part, all of the lands described in this contract not later than thirty days prior to the time when said lands are prepared and ready for placing on the market, and shall furnish to said party of the second part a complete abstract of title to said lands, showing said trustee to be vested with a good merchantable title thereto, and said parties of the first part shall also, furnish with said abstract of title the opinion of an attorney to be approved by party of the second part, showing said trustee to be vested with an unencumbered and merchantable title to said lands. It is further provided that said trustee shall be a resident of Hidalgo County, and shall maintain his office at Mission, Texas, and all remuneration received by him for his services shall be determined and paid for by parties of the first part."

The thirteenth clause provides for the laying out of 50 acres, in 10-acre tracts, by the owners, at different points on the tract, and the fourteenth for the execution of all deeds by the trustee of the owners to the different purchasers.

■ Marks and Hartnagel, owners of the land, were nonresidents, and through a contract with E. M. Goodwin placed their land, consisting of 5,600 acres, in his hands for improvement and sale. The land at that time had not been improved or developed, but was in its natural state. There was testimony tending to show that it was worth from $20 to $25 per acre. The owners were desirous of obtaining irrigation for the land in order to enhance its value and place it in a marketable condition. Goodwin contracted with the owners to pay one-half the cost of having the land surveyed and one-half the cost of procuring data that would, entitle him to organize a water control and improvement district so as to obtain irrigation. To this end it became necessary to obtain other lands in addition to the 5,600 acres. Goodwin was empowered to advertise and procure purchasers at his own expense and to sell land to those who desired to purchase. Goodwin procured the assent of the owners of about 22,000 acres of land to join with him in organizing an irrigation district. Goodwin owned about 2,900 acres of the 22,000 acres, which had to be controlled in order to organize an irrigation district. He was authorized by the contract to own lands adjoining the 5,600-acre tract. Marks and Hartnagel were fully notified of all the steps taken to organize the district. The permit for water rights was obtained after some time and after litigation was forced on him. Goodwin spent about $50,000 in connection with the Marks and Hartnagel land, besides giving his time and attention to the enterprise. Without expense to the owners the land was enhanced in value from $20 or $25 an acre to $175 per acre. The contract in question was duly recorded in Hidalgo county. The application for receiver and injunction was filed on July 24, 1929, and the Stallcamp deed to the American Land & Development Company was dated July 29, 1929, after notice had been received of the pendency of this suit. Stuart and Cowan, who composed two of the three incorporators of the American Land & Development Company had sought to buy the land from Goodwin and had gone over it three times with purchase in view. They had full notice of the contract and of Goodwin's interest in the land. If the conveyance to Stallcamp was a real transfer of the property, he bought the land with notice of the interest of Goodwin in it, because the contract had been on record for a year before he had obtained his deed, and he showed actual knowledge of the contract because he referred to the contract for a description of the land in his deed to the land company, and he knew that the present suit was pending when he executed the deed to the American Land & Development Company.

The evidence tends to show a conspiracy between Marks and Hartnagel and Stallcamp and the land company to deprive Goodwin of his interest in the land obtained through the contract and the expenditure of his money and the consumption of his labor thereunder.

■ We conclude that the contract by its terms and his compliance therewith in giving two years of his time and thousands of dollars in moving, and in improving and adding to the value of the land, gave him such an interest as to entitle him to a receiver. The statute, subdivision 1, art. 2293, Revised Statutes 1925, provides that a receiver may be appointed in suits where a party is "interested in any property or fund" and whose "interest in the property or * * * proceeds thereof is probable," and it appears the property may be lost or materially injured. We think this case comes within the

purview of that provision, because Goodwin had an interest in the land, whose increased value had been created by his efforts and money, and because the owners of the land with whom he had contracted had combined with other parties to destroy his interest in the property. Appellee had such a vital interest in the land as to entitle him to place the property in the hands of a receiver and protect his interest. This is not a question of whether Goodwin had a lien on the proceeds of the land, which would bring it within the purview of Carter v. Hightower, 79 Tex. 135, 15 S. W. 223, but it is a case where a contract gives a specific interest in the proceeds arising from the sale of the land. Goodwin is styled "purchaser" in the contract, and it is provided that Goodwin shall have all the proceeds of the land over and above $65 an acre, and that, if there are deferred payments, vendor's lien notes for the purchase money up to $65 an acre should be executed to the owners, and for all above that sum to the "purchaser," that is Goodwin, who is in effect made part owner of the land or its proceeds. The "sellers," as Marks and Hartnagel are called in the contract, could not destroy that interest in the land held by Goodwin, and the parties to whom they sold, having full knowledge of the terms of the contract, cannot profit by the transaction.

█ Holders of the deed of trust on the the land have no cause for complaint, because the full amount of their claim was tendered into the trial court and is still held by such court for the mortgagees.

The motion for rehearing is granted, our former opinion withdrawn, and this substituted therefor, and the judgment will be affirmed.