**E. M. GOODWIN, Inc., v. STUART et al.**

No. 8791.

Court of Civil Appeals of Texas. San Antonio.

April 6, 1932.

Rehearing Granted June 22, 1932.

Rehearing Overruled July 20, 1932.

Hill & Greer, of Mission, and James R. Dougherty, of Beeville, for appellant.

Strickland, Ewers & Wilkins, of Mission, Davenport, West & Ransome, of Brownsville, and Bonner & Childress, of Wichita Falls, for appellees.

FLY, C. J.

This is an appeal from the judgment of the district court sustaining a general demurrer to the petition and dismissing the cause. This is a second appeal of this cause; the opinion given by this court on the former appeal being found in Stuart et al. v. E. M. Goodwin, Inc., 25 S.W.(2d) 166, 167. An attempt was made to obtain a writ of error in the Supreme Court, but the application was dismissed for want of jurisdiction. The former appeal was prosecuted by Stuart and others from an order appointing a receiver to take charge of certain land and a temporary injunction to restrain interference with the receiver in the discharge of his duties. We copy the following statement from the former opinion:

"Appellee [E. M. Goodwin, Inc.] claims an interest in the land subject to the deed of trust under a conveyance from E. M. Goodwin, which was executed on the ——— day of ———, 1928. The deed of trust on the land was executed on November 3, 1918, by the owner, Eloisa Vela Dougherty, to secure a debt due by her to F. G. Oppenheimer and Ben F. Levy. The debt and deed of trust were kept alive by extensions, so that the debt amounting to $21,811.69 would not be barred by limitations until December 3, 1929. The debt and lien are now owned by R. T. Stuart & Co. The land in question, after the extension of the debt, was sold by the owner to J. C. Marks and George Hartnagel, nonresidents, subject to the lien and debt. On February 3, 1926, a written contract was entered into between Marks and Hartnagel, and it is through that instrument that E. M. Goodwin claims an interest. On June 7, 1929, Marks and Hartnagel conveyed the land to Edward L. Stallcamp, and he conveyed it to the American Land & Development Company, one of the appellants herein."

It is stated by appellant in its brief that "the record on this appeal is a little out of the ordinary," but an inspection of the record by this court leads to the conclusion that it is one of the most extraordinary records that has ever been brought to its attention. Appellant has inserted in the record a bill of exceptions taken in a proceeding involving the vacating of a receivership and the dis-

charge of the receiver. The bill of exceptions proper contains 116 pages of the record, and attached thereto are exhibits of the transcript on the former trial containing 123 pages, and the statement of facts used on the former appeal containing 254 pages. The bill of exceptions, with monstrous exhibits, has no pertinency to nor connection with the case on appeal, as fully admitted by appellant in its brief. No reason is given for including the bill of exceptions in the record. The order vacating the receivership is not before this court.

This appeal is not prosecuted from any order in regard to the receiver, but only from a judgment sustaining a general demurrer and special exceptions to the petition. Nine of the twelve assignments of error assail the action of the court in vacating the receivership, and are all overruled because that matter is not before this court through the appeal bond. The order in regard to the receivership was separate and distinct from the final judgment, and is not mentioned therein. The other three assignments of error assail the action of the court in sustaining the general demurrer and a special exception with six subdivisions.

This suit is based, as on the former appeal, on a certain contract, and of which a full analysis was given on that appeal. We adopt that analysis, and it is copied and made a part of this opinion:

"The first paragraph of the contract asserts ownership in Marks and Hartnagel, gives the reasons for making the contract with E. M. Goodwin, agrees to furnish him the land for the purposes and on the terms thereinafter set out, and gives a full description of the land. The second paragraph binds the owners to have made a survey of the land and maps and other data in view of irrigation. The third paragraph binds the owners to survey the land into 40-acre tracts and lay out all necessary roads and plat the same and furnish other necessary means to sell the land, and pay for such improvements. In the fourth paragraph the owners agreed to furnish each purchaser an abstract of title, and all deeds, notes, and deeds of trust necessary to be used in the sale of the land, and that all contracts of sale should be furnished by Goodwin. The fifth paragraph is an obligation upon the part of Goodwin to use diligence in the sale of the land, to give the necessary advertising and conduct excursions. By the sixth clause Goodwin is given exclusive control of the sale of the land for five years, and it provides for his remuneration and for the sums to be paid the owners, and in clause 7 all money over and above a certain sum per acre was made a trust fund to be used as therein directed. The eighth clause gives Goodwin power to sell the land upon the terms and conditions he may elect, providing that no tract smaller than 5 acres shall be sold, and that vendor's lien notes shall not run for a longer period than ten years, and that notes should be made payable to a trustee to be named, and that all damages received for failure to enter into contracts should be the property of Goodwin. The ninth clause is as to the time limit given Goodwin to make sales, and stipulates the amount of land to be sold each year. The tenth clause disclaims the agency of Goodwin in the sale of land, and the eleventh section grants the privilege to Goodwin to acquire and develop lands contiguous to the 5,600-acre tract.

"As some stress is placed on paragraph 12, we copy as follows: '12. Said parties of the first part hereby obligate and bind themselves to convey to a trustee to be selected by said parties of the first part and approved by said party of the second part, all of the lands described in this contract not later than thirty days prior to the time when said lands are prepared and ready for placing on the market, and shall furnish to said party of the second part a complete abstract of title to said lands, showing said trustee to be vested with a good merchantable title thereto, and said parties of the first part shall also furnish with said abstract of title the opinion of an attorney to be approved by party of the second part, showing said trustee to be vested with an unencumbered and merchantable title to said lands. It is further provided that said trustee shall be a resident of Hidalgo County, and shall maintain his office at Mission, Texas, and all remuneration received by him for his services shall be determined and paid for by parties of the first part.'

"The thirteenth clause provides for the laying out of 50 acres, in 10-acre tracts, by the owners, at different points on the tract, and the fourteenth for the execution of all deeds by the trustee of the owners to the different purchasers."

The contract is not on its face incapable of specific performance sought through the petition, and appellant had the right to have his petition tried on its own merits. The petition was not to be tested by testimony that had been given or might be presented, but on its own allegations. In so testing it, when assailed through a general demurrer, every reasonable intendment must be indulged and read into it. The petition was not subject to attack from the general or the special demurrer, and the facts alleged should have been tried before the court or jury on the merits of the case.

We are asked to test the sufficiency of the petition by facts heard by the judge in a trial had on a plea theretofore filed by appellees seeking to vacate and set aside a receivership granted in the case. In other words, the petition is to be declared in conflict with the

facts developed on the hearing of a question growing out of and subject to the facts on the merits. We recognize the existence of cases in which it has been held that, if the allegations in a petition are in conflict with the facts brought out on a former trial of the cause, the judge may in view of such conflict hold that the petition does not state a cause of action and consequently is subject to a general demurrer. This rule has not been more forcefully or clearly stated in any case than in the case of Snow v.' Cook, 278 S. W. 520, which was written for this court by Associate Justice Smith. In that' case the action was to set aside a judgment theretofore rendered in the case on a full hearing of the facts, and it was held that in determining the sufficiency of the petition in the second suit the court could take cognizance of the record in the case in which the assailed judgment was rendered, and from that record could determine whether there was basis in fact for destroying the former judgment. That case had been fully developed and a judgment rendered on facts offered, by the opposing parties. While we are not disposed to question the decision in the case cited, still the rule therein enunciated has been carried to its limit, and we do not believe that the rights of appellant should be determined on facts offered in a hearing on an affair merely appurtenant to the main case. The question in the motion to vacate the receivership was not presented to try the right of appellant to recover, but to set aside a receivership not deemed necessary to be continued in the case. We are unwilling to sustain the contention that sustaining the motion denied to appellant the right to recover on his demand against appellees. There is no such conflict shown between the facts in that ·proceeding and the allegations in the petition as would destroy the latter.

The costs of including transcript and statement of facts connected with the former appeal would be assessed against appellant but for the fact that appellees insist that they are properly included and state they would have brought them up if appellant had not. They seem well satisfied with the increased cost of the record, and no one has the right to complain.

The judgment is reversed, and the cause remanded.

On Motion for Rehearing.

PER CURIAM.

Upon a full reconsideration of the facts in the case, we have reached the conclusion that it was erroneously held that the pleadings or evidence disclosed a contract capable of being specifically enforced in a judicial proceeding. Appellant had not performed his part of the contract, but had allowed the limit for the existence of the con-

tract to be reached. Appellant had not performed services for which he could demand payment, and the contract was executory and incapable of specific performance. We have considered a number of authorities on the subject, and some of them have been fully reviewed and quoted from herein.

There is a full statement of the allegations of the petition in the former opinion, which is retained, and it is therefore unnecessary to make another statement.

It is perfectly obvious that Hartnagel and Marks selected and employed Goodwin as their agent to sell their land because of his experience, training, and presumed skill in such projects. He was to use diligence in the sale of the land, to advertise it, to locate and interest prospective buyers in northern states who were disposed and financially able to purchase the lands in small tracts; he was to assemble these prospects into trainloads, move them to the site of the lands, convert them into buyers at prices which would net Hartnagel and Marx $62.50 per acre. He was to perform innumerable personal services which could be efficiently performed only by those trained and skilled in such matters. The contract is purely executory, since Goodwin has sold none of the land.

Let us suppose, now, that Goodwin should lose interest in the project, or was diverted into other fields of activity more to his liking, or which promised greater or quicker or more pleasing returns. What, in such case, could Hartnagel and Marks do to prevent him from abandoning the project for the new venture? Certainly they could not exact specific performance of any of his obligations. They would be utterly helpless before his inaction or indifference or refusal or failure, for any reasons, to perform.

The remedy of specific performance being therefore unavailable to one of the parties, because of the nature of the contract, it is not available to the other party.

This rule is specifically applicable to a contract of agency to sell land, which "could not be specifically enforced by either party against the other"—it was an employment of Goodwin "as agent to sell the land," and therefore "specific performance could not be had." Chief Justice Brown in Ansley Realty Co. v. Pope & Smith, 105 Tex. 440, 151 S. W. 525, 527.

The contract being for the personal services of Goodwin, upon whose personal will the performance thereof rests, it cannot be specifically enforced against him; and, since it cannot be enforced against him, it lacks essential mutuality and cannot be enforced against the other party. 4 Pom. Eq. Jur. pp. 2760, 2765, §§ 1401, 1402, note 1; 6 Pom. Eq. Jur. §§ 759, 769; 36 Cyc. pp. 581, 621, 629; 25 R. C. L. pp. 232, 305; Rutland Marble Co. v. Ripley, 10 Wall. 339, 359, 19 L. Ed. 955;

Ansley Realty Co. v. Pope & Smith, 105 Tex. 440, 151 S. W. 525; Prusiecke v. Ramzinski (Tex. Civ. App.) 81 S. W. 771, 773; Carrico v. Stevenson (Tex. Civ. App.) 135 S. W. 260, 261; Galbreath v. Farrell (Tex. Civ. App.) 249 S. W. 277, 280; Parrish v. Weber (Tex. Civ. App.) 17 S.W.(2d) 106.

It is said by Mr. Pomeroy that "as an almost universal rule contracts for personal acts will not be directly enforced" (4 Pom. Eq. Jur. note 1, § 1402); that courts "cannot enforce a decree" of specific performance in "contracts for personal services, where the full performance rests upon the personal will of the contracting party" (note 10, § 1406); that it "follows, therefore, that the remedial right" of specific performance, "if it exists at all, must be mutual; each party must be able to enforce the remedy against the other" (note 1, § 1401); that "if for any reason" either of the parties to a contract "is not bound, he cannot compel performance by the other" (note 3, § 1405).

Mr. Pomeroy says, further, on this point: "It is a familiar rule that contracts for personal services, where the full performance rests upon the personal will of the contracting party, will not be specifically enforced against him. It is also generally true that they will not be enforced where the plaintiff is the one who has contracted to render the services, and there has been no full performance on his part, since mutuality in the equitable remedy is then lacking." 6 Pom. Eq. Jur. § 759.

And again: "If, at the time of the filing of the bill in equity, the contract being yet executory on both sides, the defendant, himself free from fraud or other personal bar, could not have the remedy of specific performance against the plaintiff, then the contract is so lacking in mutuality that equity will not compel the defendant to perform but will leave the plaintiff to his remedy at law." Id. § 769.

The rule is thus stated in 36 Cyc. 581: "Although the contract may be one that is otherwise proper to be specifically enforced, if, at the time of the decree, there remain to be done, on plaintiff's side, personal services or other acts of a kind which, in accordance with the general rule, the court cannot compel to be done, specific performance is usually refused on the principle that the remedies in equity must be mutual."

And again (36 Cyc. 629) it is said that "relief (of specific performance) is refused where * * * the contract calls for * * * business services, such as agent, manager * * * etc."

Further (36 Cyc. 579) the rule is more elaborately stated:

"*Personal Services or Business Employment*—a. *In General.* In cases of this character a decree for specific performance is open not only to the objection that it calls for an undue amount of supervision by the court, but to still graver objections, which are well stated in a very recent case: 'Any system or plan by which the court could order or direct the physical coercion of the laborer would be wholly out of harmony with the spirit of our institutions, and his imprisonment would take away his power to make specific performance. Even if such authority existed its exercise would be undesirable. If the relation of employer and employee is to be of value or profit to either it must be marked by some degree of mutual confidence and satisfaction, and when these are gone and their places usurped by dislike and distrust, it is to the advantage of all concerned that their relations be severed.' "

And: "On the same principle the direct specific performance has been refused of contracts to act as agent, manager, or superintendent, or in other business capacity, although the employment may not be one calling for skill and judgment."

In 25 R. C. L. (p. 303) it is said that "Chancery will not as a rule enter an affirmative decree directing the performance of personal services by an adult. Nor will it in this manner enforce contracts requiring either continuous acts involving skill, judgment and technical knowledge, or, as the rule is sometimes stated, those which require special skill, judgment and discretion. This is especially true where the contracts are continuous in their nature and run through a number of years or an indefinite period of time. This rule is based on the futility of the attempt by a court to command one person to render personal services to another, or to direct the performance of duties which it is impossible for the court to superintend."

And that (page 305) "By reason of the doctrine of mutuality, a court of equity will refuse to decree the specific performance of an executory contract wherever it creates a duty from the plaintiff of such confidential or personal nature that the court could not have enforced it at the instance of the defendant."

Again (Id. p. 232): "It is frequently stated as a general principle of equity that a contract will not be specifically enforced unless it has such mutuality that it may be enforced by either party, and the language adopted by numerous courts is to the effect that equity will grant a decree of specific performance only in cases where there is a mutuality of obligation and of remedy. In accordance with this doctrine of mutuality it is held that when a contract for any reason cannot be enforced against one of the parties such party will not be permitted to enforce it specifically against the other party, although except for this particular rule the contract would otherwise have been enforceable."

In the case of Rutland Marble Co. v. Rip-

ley, supra, the Supreme Court of the United States said that: "It is a general principle that when, from personal incapacity, the nature of the contract, or any other cause, a contract is incapable of being enforced against one party, that party is equally incapable of enforcing it specifically against the other, though its execution in the latter way might in itself be free from the difficulty attending its execution in the former."

It was said by Judge Neill, of this court, in Prusiecke v. Ramzinski, supra: "When a contract is of such a character that a court of equity is without power to enforce it as against one or the other of the parties, the party against whom it cannot be enforced cannot, until he has fully performed his part of the agreement, though the other party could be forced to perform his, obtain a decree of specific performance. Ikerd v. Beavers, 106 Ind. 483, 7 N. E. 326, 328. For a court of equity will not attempt to enforce a contract specifically unless it can be done mutually and completely, and so as to secure substantially beyond question all that the parties contemplate. If this is impracticable, the remedy, if any exists, is to be found elsewhere."

We quote from the opinion in Carrico v. Stevenson, supra: "But we think it is an insuperable objection to the relief by specific performance prayed for by appellant that, on account of the nature of the work required by the contract to be done by him, the court could not properly compel him to perform it. It is entirely clear that the court could not properly compel appellant to perform his part of the contract. It involved, not only personal service by him, but, independent of this, the character of the work to be done, that is, the clearing of a large body of land, about 25,000 acres, as stated in the contract, which by the terms of the contract was to extend over a considerable period of time, with many complicated provisions regarding the details of the work, would require of the court such supervision of the work to be done by appellant as it could not properly undertake. We think that it is universally held that a court of equity will not undertake to decree specific performance of contracts of this nature. 6 Pom. Eq. Juris. (3d Ed.) §§ 757-760. This is not controverted by appellant, but he seeks to avoid the application of this principle upon the ground that he is ready, able, and willing and offers to perform. This is not sufficient for appellee's protection. If the contract on the part of a plaintiff who seeks this remedy is not such as he can be compelled to perform, if he has in fact done so, he would be in a position to require specific performance on the part of the defendant, who would not be allowed to defend on the ground that plaintiff could not, on account of the nature thereof, be compelled to perform

his part, but that is as far as the plaintiff's rights extend on this point. 'Before plaintiff has performed the personal service, he could not have specific performance, but after his part is executed he can get the land.' 6 Pom. Eq. Juris. (3d Ed.) § 771. That equity will not compel one party to a contract to perform, where it cannot also compel specific performance by the other party, is, we think, well settled. 6 Pom. Eq. Juris. § 769 et seq.; Waterman, Sp. Perf. § 198; Redwine v. Hudman [104 Tex. 21], 133 S. W. 426; [Rutland] Marble Co. v. Ripley, 77 U. S. [10 Wall.] 359, 19 L. Ed. 955."

The rule is thus stated in Galbreath v. Farrell, supra: "As we understand the rule under the authorities in cases of this kind, before a court of equity will enforce affirmative promises made by defendant in behalf of the plaintiff, it must also be able to enforce the affirmative promises made by plaintiff in behalf of the defendant. Such court never deems it wise or just to enforce one or more of the promises in a contract until it can enforce all of the contract outstanding at the time of the suit, including the promises of the plaintiff as well as those of the defendant. Northern Texas Realty & Construction Co. v. Lary (Tex. Civ. App.) 136 S. W. 843; Williston on Contracts, vol. 3, § 1430."

Being fully convinced that our judgment of reversal is not sustained by the authorities, it is set aside, and the judgment of the trial court will be affirmed.