E. M. Goodwin, Incorporated, v. R. T. Stuart et al.

No. 6373.   Decided May 15, 1935.
(82 S. W., 2d Series, 632.)

*James R. Dougherty,* of Beeville, and *Hill & Greer,* of Mission for plaintiff in error.

Plaintiff was entitled to specific performance to have land transferred to a trustee, as provided in contract. Doty v. Barnard, 92 Texas, 104, 47 S. W., 712; North Texas Oil & Rfg. Co. v. Standard Tank Car Co., 249 S. W., 253; Matthews v. Caldwell (Com. App.), 258 S. W., 810; 10 Tex. Jur., par. 257.

*Strickland, Ewers & Wilkins,* of Mission, *Davenport, Brown & Ransome,* of Brownsville, and *Wm. N. Bonner* and *V. Childress,* both of Wichita Falls, for defendants in error.

To entitle one to specific performance of contract he must show that a recovery of damages for its breach will not be an adequate remedy. Bergstedt v. Bender (Com. App.), 222 S. W., 547.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

When this cause first reached the Court of Civil Appeals the appeal was from an interlocutory order appointing a receiver. The action of the trial court in appointing the receiver was affirmed by the Court of Civil Appeals. 25 S. W. (2d) 166. At a later date a motion to discharge the receiver was sustained and at the same time a general demurrer to the

petition of plaintiff in error was sustained. On appeal to the Court of Civil Appeals the action of the district court was first reversed, but on motion for rehearing the judgment sustaining the general demurrer was affirmed. 52 S. W. (2d) 311. These opinions of the Court of Civil Appeals furnish a full statement of the facts.

On the first appeal it was held by the Court of Civil Appeals that plaintiff in error had such an interest under the contract involved that authorized it to have a receiver appointed, but it was not held that it had any interest in the lands in question.

The suit was one instituted by plaintiff in error, E. M. Goodwin, Inc., against R. T. Stuart and others for the purpose of obtaining specific performance of the contract. Plaintiff in error alleged that it and its predecessor in interest had substantially performed all of the requirements of the contract so far as they were concerned, and sought a judgment of the court requiring the other parties to perform their part of the agreement, and especially that portion providing for conveyance of certain lands to a trustee. The contract is a lengthy one, but all parties agree that the substance of same has been correctly stated by the Court of Civil Appeals in the following language:

"The first paragraph of the contract asserts ownership in Marks and Hartnagel, gives the reasons for making the contract with E. M. Goodwin, agrees to furnish him the land for the purposes and on the terms thereinafter set out, and gives a full description of the land. The second paragraph binds the owners to have made a survey of the land and maps and other data in view of irrigation. The third paragraph binds the owners to survey the land into 40-acre tracts and lay out all necessary roads and plat the same and furnish other necessary means to sell the land, and pay for such improvements. In the fourth paragraph the owners agreed to furnish each purchaser an abstract of title, and all deeds, notes, and deeds of trust necessary to be used in the sale of the land, and that all contracts of sale should be furnished by Goodwin. The fifth paragraph is an obligation upon the part of Goodwin to use diligence in the sale of the land, to give the necessary advertising and conduct excursions. By the sixth clause Goodwin is given exclusive control of the sale of the land for five years, and it provides for his remuneration and for the sums to be paid the owners, and in clause 7 all money over and above a certain sum per acre was made a trust fund to be used as therein directed.

The eighth clause gives Goodwin power to sell the land upon the terms and conditions he may elect, providing that no tract smaller than 5 acres shall be sold, and that vendor's lien notes shall not run for a longer period than ten years, and that notes should be made payable to a trustee to be named, and that all damages received for failure to enter into contracts should be the property of Goodwin. The ninth clause is as to the time limit given Goodwin to make sales, and stipulates the amount of land to be sold each year. The tenth clause disclaims the agency of Goodwin in the sale of land, and the eleventh section grants the privilege to Goodwin to acquire and develop lands contiguous to the 5,600-acre tract.

"As some stress is placed on paragraph 12, we copy as follows: '12. Said parties of the first part hereby obligate and bind themselves to convey to a trustee to be selected by said parties of the first part and approved by said party of the second part, all of the lands described in this contract not later than thirty days prior to the time when said lands are prepared and ready for placing on the market, and shall furnish to said party of the second part a complete abstract of title to said lands, showing said trustee to be vested with a good merchantable title thereto, and said parties of the first part shall also furnish with said abstract of title the opinion of an attorney to be approved by party of the second part, showing said trustee to be vested with an unencumbered and merchantable title to said land. It is further provided that said trustee shall be a resident of Hidalgo County, and shall maintain his office at Mission, Texas, and all remuneration received by him for his services shall be determined and paid for by parties of the first part.

"The thirteenth clause provides for the laying out of 50 acres, in 10-acre tracts, by the owners, at different points on the tract, and the fourteenth for the execution of all deeds by the trustee of the owners to the different purchasers."

The Court of Civil Appeals held on rehearing that this contract was not "capable of being specifically enforced in a judicial proceeding," and as we have reached the conclusion that this holding is correct it is only necessary to briefly supplement the opinion of the Court of Civil Appeals.

1 As we interpret this contract, it clearly constituted only an agency agreement for the sale of lands, by the terms of which Marks and Hartnagel were to furnish lands to Goodwin for sale, do certain things in order to make them saleable, and to execute deeds to purchasers after sales were made by Goodwin;

while Goodwin was obligated to use diligence to make sales of all land, and in the event of sales to share to a certain named extent in the consideration received. The relief sought by plaintiff in error was in the strictest sense a specific performance of all of the provisions of the contract so far as defendants in error are concerned. This relief was summarized by plaintiff in error in his brief as follows:

"Second, that upon final hearing appellant have judgment: a. Directing conveyance of the property to a trustee, to be appointed by the Court; b. establishing its said contract and declaring same to be in full force and effect, and declaring the rights of appellant thereunder to be superior to all rights of the other parties, and that said contract be performed.

"Third, that the Court inquire into and determine the respective rights of the claims asserted by each and everyone of the defendants (appelleees) and declare that same shall be satisfied, if at all, out of any part of the proceeds of the sale of the land belonging to Hartnagel and Marks and their assigns.

"Fourth, that the court appoint a trustee and direct said trustee to act and carry out the contract of February 3, 1926, and decree the title to the land to be vested in said trustee free and clear of all claims of the defendants (appellees) and direct said trustee to issue deeds to any and all purchasers procured by appellant in accordance with the terms of the contract.

"Fifth, that the trustee be empowered, and upon sales made by appellant under the contract to execute deeds and pay to appellant and appellees all such sums as may be due to each under the contract, and that the costs of the litigation be paid out of the part of such proceeds coming to Hartnagel and Marks or their assigns, under the contract.

"Sixth, that appellees be permanently enjoined from interfering with the possession of the trustee, and from interfering with the performance of the contract, and that after the receiver has conveyed the land to the trustee, that the receiver be discharged."

The contract as a whole clearly discloses that the dominant purpose to be accomplished was a sale of the lands to the mutual advantage of all parties, and especially to Marks and Hartnagel. It is obvious therefore that if they were without an equitable remedy so far as requiring a performance of the contract in making sales of the lands on the part of Goodwin, he and plaintiff in error which holds his interest under the contract were likewise without such a remedy. It is only necessary to casually note the obligations resting upon Goodwin to see that

the enforcement of the contract on his part could not have been compelled by a court of equity. The obligations on the part of Goodwin imposed by the contract are as follows:

"Said party of the second part hereby obligates and binds himself to use and exercise all diligence in the sale of said lands, and to furnish at his own proper cost and expense, all necessary advertising matter and the expense incurred in bringing prospective purchasers upon said lands, and conduct all necessary 'Home Seekers' Excursions' to said land that he deems necessary and appropriate to the sale of same, and to make suitable provision for the housing and care of said prospective purchasers on said 'Home Seekers' Excursions' all at the cost and expense of said party of the second part."

"It is further mutually agreed and herein stipulated that said party of the second part shall be allowed a period of five (5) years from the date when said parties of the first part have placed said irrigating system and said lands in condition to be placed upon the market, subject to the following limitations, to-wit: Said party of the second part obligates himself to sell not less than five hundred acres of land during the first year, and to have sold not less than two thousand acres of said land by the end of the second year, and the remainder of said lands shall be sold at the rate of twelve hundred acres per year until the entire tract herein described shall be sold.

"It is further mutually agreed and understood that said party of the second part is in no sense, and shall not be considered in the sale of said lands herein described as the agent of said parties of the first part, but that in all matters connected with and affecting the sale of said lands, said party of the second part is acting for himself and solely for himself."

It is evident that one who is obligated only in "use and exercise all diligence in the sale of lands" could not be compelled to sell any quantity of land at any time, and it inevitably follows that if Marks and Hartnagel had done everything they contracted to do they would have still been entirely helpless so far as being able to require Goodwin to sell the lands upon the terms and for the prices provided for in the agreement.

2 It is so well settled as to be fundamentally and universally recognized that equitable relief by specific performance will not be granted when the other party does not have a mutual or correlative right to the same equitable remedy.

In addition to the authorities cited by the Court of Civil Appeals the case of Felder v. Dreckshage (Mo. App.), 227 S.

W., 929, is similar in principle upon the facts. In that case the court said:

"In the case before us it cannot be doubted, we think, that, taking the most favorable view of plaintiff's evidence, and conceding that not only was the contract, as pleaded, established by the evidence, but, arguendo, that the part performance shown takes the case out of the statute of frauds, and eliminating all other features of the case or questions which might or might not affect plaintiff's right to specific performance, we regard it as clear that there was no mutuality of the remedy, and that for this reason the contract cannot be specifically enforced against the defendants. This is for the reason that it appears by both plaintiff's pleading and his proof that the consideration for the contract was executory in character and consisted of personal services to be performed by him of such nature as to make it impossible for the defendants to have specifically performed the contract against the plaintiff. And, as shown above, if the contract was of such character that the defendants could not in equity have enforced the specific performance thereof as against plaintiff, then plaintiff cannot invoke the aid of a court of equity to enforce it against the defendants."

The court then quoted with approval from Pomeroy on Specific Performance as follows:

"Contracts for personal services, where the acts stipulated for require special knowledge, skill, ability, experience, or the exercise of judgment, discretion, integrity and the like personal qualities, on the part of the employes, or where the servies are confidential—in short, wherever the full performance, according to the spirit of the agreement, rests in the individual will of the contracting party, courts of equity have no direct and efficient means of affirmatively compelling a specific execution."

The decision of the case upon this point makes it wholly unnecessary to discuss other questions that have been ably briefed by counsel.

The judgment of the Court of Civil Appeals is in all things affirmed.

Opinion adopted by Supreme Court May 15, 1935.