James ALEXANDER, Appellant,

v.

HANOVER FIRE INSURANCE COMPANY OF NEW YORK, Appellee.

No. 3606.

Court of Civil Appeals of Texas.

Eastland.

April 14, 1961.

Rehearing Denied May 19, 1961.

**668**

Turner & Seaberry, Eastland, for appellant.

McMahon, Smart, Sprain, Wilson, & Camp, Abilene, for appellee.

GRISSOM, Chief Justice.

In April, 1958, The Hanover Fire Insurance Company of New York issued to Fanny and Nanny McCullough a fire insurance policy insuring them against loss of their residence by fire. It provided that the insurer should not be liable for a loss after a "change in ownership" of the insured property. Thereafter, the McCulloughs and James Alexander and wife entered into a written contract for the exchange of their homes in Albany. It required the McCulloughs to pay the monthly payments due on the Alexander home. The Alexander house was then the homestead of the Alexanders and occupied by them and their children. Upon execution of said contract, the Alexanders moved into the McCullough home and the McCulloughs moved into the Alexander homestead. Mrs. Alexander was unwilling to give up her old homestead and the Alexanders informed the McCulloughs that they had "backed out" and wanted to move back into their homestead, which the McCulloughs refused to permit. Soon thereafter, while the policy was in force, the McCullough home, then occupied by the Alexanders, was destroyed by fire. Thereafter, the Alexanders filed a suit in trespass to try title against the McCulloughs to regain possession of their old homestead. They failed to produce proof of their title and judgment was rendered against them. Thereafter, the McCulloughs assigned to Alexander all their rights under said insurance policy. Alexander filed this suit on the fire insurance policy assigned to him by the McCulloughs and, in a trial to the

court, judgment was rendered for the insurance company. Alexander has appealed.

■ The controlling question presented is whether at the time of the fire there had been a change in ownership of the old McCullough home within the meaning of said forfeiture provision in the insurance policy. It was stipulated that at the time of the fire the title to the house destroyed was in the McCulloughs, unless title had passed to Alexander. Alexander continued to make the monthly payments due on his homestead which the McCulloughs had agreed to pay. An executory contract to sell a homestead is not enforceable. No deeds were executed prior to the fire. While the contract was executory and unenforceable the Alexanders repudiated the contract to exchange their homestead. They had the legal power and right to do so at any time before Mrs. Alexander stated to the notary taking her acknowledgment to a deed to her homestead that she did not wish to retract it and title passed. 22 Tex.Jur. 116. An executory contract for the sale of a homestead cannot be specifically enforced. 38 Tex. Jur. 729. In Jones v. Goff, 63 Tex. 248, the Supreme Court considered a suit for specific performance of an executory contract to convey a homestead. It held that such a contract could be repudiated and enforcement prevented by the wife declaring her wish to retract it at any time before examination by the notary was concluded and the title passed. Since the Alexanders repudiated the contract and their contract to convey their homestead could not be enforced, no right to enforce the contract to exchange homes existed. Angier v. Coward, 79 Tex. 551, 15 S.W. 698, 699. In Goodwin, Inc. v. Stuart, Tex.Com.App., 125 Tex. 212, 82 S.W.2d 632, 634, Judge German, in an opinion adopted by the Supreme Court, said:

"It is so well settled as to be fundamentally and universally recognized that equitable relief by specific performance will not be granted when the other party does not have a mutual or correlative right to the same equitable remedy."

The decision of our Supreme Court in Ansley Realty Co. v. Pope, 105 Tex. 440, 151 S.W. 525, is to the same effect.

■ A prohibition in a fire insurance policy against change of ownership is not violated by an executory, unenforceable contract for the exchange of the insured property. 45 C.J.S. Insurance § 564, p. 327; 24–B Tex.Jur. 480, 481. This rule is not altered by a mere change of possession under such an agreement. In Detroit Fire & Marine Ins. Co. v. Boren-Stewart Co., Tex.Civ.App., 203 S.W. 382, 384 (Writ Ref.), it was held that an executory agreement to sell the insured goods was not a change in their interest, title or possession within the meaning of a fire insurance policy although the goods were in the possession of the prospective purchasers under their agreement to purchase. The court said there was no evidence that the possession of the prospective purchasers under their agreement to purchase increased the hazard and, therefore, such change of possession was immaterial, except so far as it threw light upon the issue of a change in title. In Pennsylvania Fire Ins. Co. v. Stockstill, Tex.Civ.App., 197 S.W. 1036, which was relied upon as an authority in the case just mentioned, in which a writ of error was refused, a deed to a prospective purchaser was placed in escrow. Before its delivery to the purchaser the property was destroyed by fire. In a suit on the fire insurance policy the defense was that there had been a change in ownership. It was undisputed that there had been a change in possession. The court said that the change of possession was immaterial, except so far as it threw light upon the issue of change of title, and that said case was to be distinguished from cases where prior to the fire the grantee had the right to compel specific performance of the contract to convey. In Germania Mutual Aid Ass'n v. Schaefer, Tex.Civ.App., 275 S.W.

**670**

2d 137, the prospective purchaser of an insured house occupied it with the consent of the proposed vendor under an oral contract to convey, but he had neither paid the consideration nor made valuable improvements. We held that, since the parol contract for sale of the house was unenforceable, there was no change in the interest, title or possession of the proposed seller within the meaning of a prohibition thereof in a fire insurance policy. See also Merchants' Ins. Co. of New Orleans v. Nowlin, Tex.Civ.App., 56 S.W. 198, 199, and Home Mutual Ins. Co. v. Tomkies & Co., 30 Tex.Civ.App. 404, 71 S.W. 812.

In Alamo Casualty Co. v. William Reeves & Co., Tex.Civ.App., 258 S.W.2d 211, 214, it was held that the proper test of ownership under an executory contract to sell is the legal right to compel a conveyance. In Mercury Fire Ins. Co. v. Dunaway, Tex. Civ.App., 74 S.W.2d 418, 420 (Writ Ref.), the court said:

"The policy provided that it should be void if any change should take place in the interest, title, or possession of the insured property. As before stated, the property was purchased and the deed taken in the name of A. J. Dunaway during his marriage to Mrs. Pearl Dunaway. Presumably it was community property at the time the policy was issued. After the divorce A. J. Dunaway conveyed the property to Mrs. Dunaway. It is the defendant's contention that this constituted such a change in the title as to avoid the policy. It is a well settled rule in this state that such a provision in a fire policy as is here under consideration is not violated by a change of title not of a nature calculated to increase the motive to burn, or diminish the motive to guard, the property against loss by fire. 24 Tex.Jur. 968; Insurance Co. of North America v. O'Bannon, 109 Tex. 281, 206 S.W. 814, par. 4, 1 A.L.R. 1407. The deed from A. J. Dunaway to Mrs. Dunaway after the divorce in no wise

decreased Mrs. Dunaway's interest in the property. Hence the policy was not avoided by such conveyance."

See also Insurance Company of North America v. O'Bannon, 109 Tex. 281, 206 S.W. 814, 1 A.L.R. 1407; Philadelphia Underwriters' Agency, etc. v. Moore, Tex. Com.App., 229 S.W. 490; and American Alliance Ins. Co. of New York v. McCumber, 8 Cir., 15 F.2d 957. See also the title ownership, 30 Words and Phrases 681, 683, and 688.

We conclude that under the undisputed facts there was no change in ownership of the house within the meaning of said policy as interpreted by the courts of Texas. The judgment is reversed and judgment is rendered for appellant.