FIDELITY FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellant, *v.* DONALD L. GRIEME *et al.*, Defendants-Appellees.

Third District   No. 82—338

Opinion filed February 25, 1983.

Douglas R. Lindstrom, of West, Neagle and Williamson, of Galesburg, for appellant.

Richard L. Whitman, of Stansell, Critser & Whitman, of Monmouth, for appellee Donald L. Grieme.

Barry M. Barash, of Barash, Stoerzbach & Henson, of Galesburg, for appellee Kathleen A. Grieme.

Ronald L. Henson, of Barash, Stoerzbach & Henson, of Galesburg, for appellee Charles F. Lange.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

Plaintiff filed a complaint to foreclose a real estate mortgage in the circuit court of Knox County. Defendants filed motions to dismiss under section 45 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 45). The trial court allowed the motions and dismissed the suit with prejudice. This appeal followed.

The parties have represented to us, and our own research has confirmed, that no precise Illinois precedent exists for the question presented here: Is an agreement for deed, made by a mortgagor without the consent of the mortgagee, for the mortgaged premises, a "change in ownership" so as to trigger the due-and-payable clause in the mortgage?

Since the case was dismissed on motion, there is no evidentiary record. A short form complaint (Ill. Rev. Stat. 1979, ch. 95, par. 23.6) was filed by plaintiff on January 11, 1982, with copies of the mortgage, the note, and a supplemental agreement attached. In addition to the formal allegations, the complaint alleged upon information and belief that the mortgagors (Grieme) had entered into an agreement for deed with defendant Lange; that the plaintiff mortgagee (Fidelity) had not consented to the execution of the agreement; that Fidelity had notified Grieme that it intended to enforce its rights; and that Grieme had refused to make satisfactory arrangements.

At issue is the construction of paragraph 7 of the supplemental agreement which provides:

"7. That in the event the ownership of said property or any part thereof becomes vested in a person other than the Mortgagor, the Mortgagee may, without notice to the Mortgagors, deal with such successor or successors in interest with reference to this mortgage and the debt hereby secured in the same manner as with the Mortgagor, and may forbear to sue or may extend time for payment of the debt, secured hereby, without discharging or in any way affecting the liability of the Mortgagor hereunder or upon the debt hereby secured; however, if there shall be any change in the ownership of the premises covered hereby without the consent of the Mortgagee, the entire principal and all accrued interest shall become due and payable at the election of the Mortgagee, and foreclosure proceedings may be instituted thereon."

As indicated, the defendants filed a motion to dismiss which the trial court allowed with prejudice, finding that the agreement for deed did not constitute a change in ownership under paragraph 7 of the supplemental agreement and hence the payment of the entire principal and accrued interest was not accelerated.

The motion to dismiss admitted the execution of the agreement for deed, but nowhere in the record does there appear anything indicating what the terms of that agreement might be.

Both parties cite considerable authority from other jurisdictions. Fidelity relies largely upon mortgage cases which construe "due-on" clauses. Grieme argues as analogous insurance cases construing clauses in policies which voided insurance in the event of change in ownership of the premises without notification to the company. He also argues that any ambiguity should be construed in his favor and against Fidelity, since the instruments show on their face that they were prepared by Fidelity.

We find neither the mortgage cases cited by Fidelity nor the insurance cases cited by Grieme particularly helpful. We are dealing here with the phrase "change in ownership." The mortgage cases from other jurisdictions which sustained the acceleration clause dealt with much more specific language. Some examples will suffice to demonstrate the difference.

In *Tucker v. Lassen Savings & Loan Association* (1974), 12 Cal. 3d 629, 632, 526 P.2d 1169, 1170, 116 Cal. Rptr. 633, 634, the provision was, "sell, convey or alienate the property *** or any part thereof, or any interest therein ***." In *Baltimore Life Insurance*

*Co. v. Harn* (1971), 15 Ariz. App. 78, 79, 486 P.2d 190, 191-92, it was, "upon the conveyance of Mortgagor's title to all or any portion of said mortgaged property and premises, or upon the vesting of such title in any manner in persons or entities other than, or with, mortgagor." In *Mutual Federal Savings & Loan Association v. Wisconsin Wire Works* (1973), 58 Wis. 2d 99, 104, 205 N.W.2d 762, 765, the provision was, "convey away said mortgaged premises or if the title thereto shall become vested in any other person or persons in any manner whatsoever ***."

The distinctions in semantics are obvious. The only case called to our attention which construes "change in ownership" is *Century Federal Savings & Loan Association v. Van Glahn* (1976), 144 N.J. Super. 48, 364 A.2d 558. We note first of all that it is a trial court decision only. More importantly, the court relied to some extent on the fact that in the event of loss, it would fall upon the contract purchaser. There is no such indication in the instant case. As previously indicated, we know nothing of the terms of the contract for deed from Grieme to Lange. The allocation of loss argument becomes irrelevant and unpersuasive. As between a contract purchaser and contract vendor, the risk of loss may depend on the Uniform Vendor and Purchaser Risk Act (Ill. Rev. Stat. 1979, ch. 29, par. 8.1), if the terms of the contract are known, but nothing in the Act affects the obligation of a mortgagor to pay the note in full.

The insurance cases cited by Grieme (*Hill v. Cumberland Valley Mutual Protection Co.* (1868), 59 Pa. (9 P.F. Smith) 474; *Great American Insurance Co. v. Merchants & Manufacturers Mutual Insurance Co.* (6th Cir. 1970), 423 F.2d 1143; *Alexander v. Hanover Fire Insurance Co.* (Tex. Civ. App. 1961), 346 S.W.2d 667) all discuss "change in ownership" as it applies in the insurance context, a matter quite different from liability on a mortgage note. In general, they state only the familiar principle of law that one may not have insurance unless he has an insurable interest, *i.e.*, protection against gambling policies. These cases indicate that a contract vendor who retains legal title would have such an interest and hence there would be no "change in ownership" within the meaning of a policy. However, as with the mortgage cases discussed above, the bare allegation of the existence of an agreement for deed tells us nothing.

■■ Both parties have dwelt on the definition of "ownership" while tending to ignore its companion in this case, "change." The mortgage, which incorporates by reference the note and the supplemental agreement, states on its face, "This instrument prepared by Fidelity Federal Savings and Loan Association, Galesburg, Illinois."

Thus is brought into play the familiar rule of construction that the instruments are to be construed most strongly against their author. *Crest Builders, Inc. v. Willow Falls Improvement Association* (1979), 74 Ill. App. 3d 420, 393 N.E.2d 107.

"Ownership" in Illinois is an amorphous concept. It was so indicated by the supreme court in *People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479, 489, 389 N.E.2d 540, 544:

> "The term 'owner,' as applied to land, has no fixed meaning applicable under all circumstances and as to any and every enactment. [Citation.] It usually denotes a fee simple estate, but in Illinois it may include 'one who has the usufruct, control or occupation of land with a claim of ownership, whether his interest be an absolute fee or a less estate.' [Citation.] Title to property does not necessarily involve ownership of the property. Title refers only to a legal relationship to the land, while ownership is comparable to control and denotes an interest in the real estate other than that of holding title thereto. [Citation.]"

■■ "Change" suffers from a similar lack of specificity. In Webster's Dictionary of Synonyms 148 (1951), it is stated:

> "Change implies either an essential difference, even a loss of identity, or the substitution of one thing for another. 'Can the Ethiopian *change* his skin, or the leopard his spots?' (*Jeremiah* xiii. 23). 'And Earth be *changed* to Heaven and Heaven to Earth' (*Milton*). Alter stresses difference in some particular respect, as in form or detail, without implying loss of identity; as, one may *alter* a coat without *changing* its style. 'The whole existing order must be, if ever so slightly, *altered*' (*T.S. Eliot*). 'External circumstances may *change* catastrophically, as during a war; or gradually, as when means of production are *altered*' (*A. Huxley*). The two words are, however, frequently interchangeable."

The ambiguity in the phrase "change in the ownership" in the supplemental agreement in the instant case is patent. There is no allegation of conveyance by Grieme and therefore it must be assumed that he retained title. It follows that there has been no essential difference or substitution within the Webster's meaning. There may have been an alteration by surmounting an equitable interest upon the legal title, but this, in itself, is not conclusive evidence that the owner of the equity may ever become the owner of the property. Compare *Chandler v. Chandler* (1978), 64 Ill. App. 3d 97, 381 N.E.2d 37.

In short, Fidelity, by the use of the phrase "change in the owner-

ship," has created a situation of sufficient ambiguity that it cannot be said as a matter of law that the execution of an agreement for deed comes within the ambit of that phrase. If it had intended so to include such a condition, it would have been simple to add a few more words to the already densely packed syntax of the supplemental agreement rather than seek refuge in the umbrella-like phrase which is employed.

Acceleration of debt is a harsh remedy, akin to forfeiture. It is elemental that both law and equity will avoid a forfeiture. *Handzel v. Bassi* (1951), 343 Ill. App. 281, 99 N.E.2d 23.

One further matter requires brief comment. In his motion to dismiss, Grieme alleged as an additional ground for dismissal that the complaint did not allege that the agreement for deed increased the risk of default or threat to the security, and that the purpose of advancing the financial interest of the lender was openly stated and bargained for at the inception of the contract. This was alluded to in *Provident Federal Savings & Loan Association v. Realty Centre, Ltd.* (1981), 101 Ill. App. 3d 277, 428 N.E.2d 170, by the court's citation with approval of *First Southern Federal Savings & Loan Association v. Britton* (Ala. Civ. App. 1977), 345 So. 2d 300. The trial court did not touch upon the subject in its dismissal order, but it has been raised anew in this court.

The matter has recently been laid to rest by the United States Supreme Court in *Fidelity Federal Savings & Loan Association v. de la Cuesta* (1982), 458 U.S. 141, 73 L. Ed. 2d 664, 102 S. Ct. 3014. The court there held that regulations promulgated by the Federal Home Loan Bank Board preempted any State law concerning due-on-sale clauses in mortgages held by federally chartered savings and loan associations. Those regulations provided in substance that the due-on-sale clauses should be fixed and governed by the loan contract.

We note, however, that the regulations became effective July 1, 1976, and the mortgage in the instant case was executed July 30, 1975. In footnote 11 to its opinion, the Supreme Court indicated that the regulations applied to loans made after the effective date of the regulations and presumably would not apply to the instant mortgage.

The dismissal order of the circuit court of Knox County is affirmed.

Affirmed.

GREEN and MILLER, JJ., concur.